Peter J. BRENNAN, Secretary of
Labor, Petitioner,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION and
Hanovia Lamp Division, Canred Precision Industries, Respondents.

No. 73-1131.

United States Court of Appeals,
Third Circuit.

Argued June 13, 1974.

Decided Aug. 14, 1974. *

Harlington Wood, Jr., Asst. Atty. Gen., Walter H. Fleischer, Michael H. Stein, Attys., Carla A. Hills, Asst. Atty. Gen., Stephel F. Eilperin, Atty., Dept. of Justice, Washington, D. C., for petitioner; William J. Kilberg, Solicitor of Labor, Benjamin W. Mintz, Associate Solicitor for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Helen Schuitmaker, Atty., of counsel.

Allen H. Sachsel, Appellate Counsel, Occupational Safety and Health Review Comm., Washington, D. C., for respondents.

Before STALEY, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case presents the issue of the proper scope of review of an adjudicatory final order of the Occupational Safety and Health Review Commission when the Secretary of Labor petitions for review or enforcement pursuant to § 11(b), 29 U.S.C. § 660(b) of the Occupational Safety and Health Act of 1970. Pub.L. 91–596, 1970 U.S.Code Cong. and Admin.News, p. 5177, 29 U.S.C. § 651 (The Act). The order in question reversed a decision by the Administrative Law Judge holding that Hanovia Lamp Division, Canrad Precision Industries, had on August 6, 1971 committed a serious violation of § 5 of the Act, 29 U.S.C. § 654(a). That subsection obliges each employer to furnish to each of his employees employment and a place of employment which are free from recognized hazards likely to cause them death or serious physical harm. Section 5(b) of the Act mandates that each employer shall comply with occupational safety and health standards promulgated under the Act. Thus the Act imposes on employers both a duty to provide employment free from recognized hazards (the general duty clause) and a duty to comply with specific standards promulgated by rule. Only the general duty clause is in issue in this case. Section 17 of the Act, 29 U.S.C. § 666, provides for civil penalties for violations of a § 5 duty. Civil penalties for serious violations are mandatory. 29 U.S.C. § 666(b). Penalties for violations determined to be not of a serious nature are discretionary. 29 U.S.C. § 666(c). Serious violations are defined as those where:

> "there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(j).

Section 9 of the Act, 29 U.S.C. § 658, authorizes the Secretary of Labor or his authorized representative to issue a written citation to any employer believed to have violated any duty prescribed by § 5. By Section 10, 29 U.S.C. § 659, the Secretary is authorized following the issuance of a § 9 citation, to notify the employer of the penalty proposed to be assessed. The employer may acquiesce in the proposed assessment or, pursuant to § 10(c), 29 U.S.C. § 659(c) notify the Secretary that he intends to contest the

**948**

citation. If, as in this case, the employer serves notice of a contest:

> "the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 [1] but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief . . . ." 29 U.S.C. § 659(c).

Section 11 of the Act provides for judicial review of a § 10(c) order by a petition to the United States Court of Appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office. The petitioner may be either a person adversely affected or aggrieved by a § 10(c) order, 29 U.S.C. § 660(a), or the Secretary, 29 U.S.C. § 660(b). On a Secretary's petition "the provisions of subsection (a) of this section [11] shall govern such proceedings to the extent applicable." 29 U.S.C. § 660(b). Thus whether the petitioner is the Secretary or a person adversely affected or aggrieved, this court is bound by the provisions of § 11(a) including the sentence:

> "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a). *See also* 5 U.S.C. § 706(2).

■ In this case the employer contested the Secretary's citation for a serious violation throughout the administrative proceedings, but it has filed no response to the Secretary's petition for review. The Commission has, however, responded in defense of its order, and the litigation is obviously a part of the ongoing conflict between the Commission and the Secretary as to their respective roles in the enforcement of the Act. *See, e. g.,* Brennan v. Occupational Safety & Health Review Commission (Pearl Steel Erection Company), 488 F.2d 337 (5th Cir. 1973); Brennan v. Occupational Safety & Health Review Commission (Brent Towing Co., Inc.), 481 F.2d 619 (5th Cir. 1973). Unlike the *Brent Towing* case, however, the employer here has not withdrawn its contest of the Secretary's citation. Thus we conclude that there is a continuing case or controversy warranting judicial review even though Hanovia has not responded to the petition for review.

The citation which produced the challenged order arose from the Secretary's investigation of an incident at Hanovia's Newark, New Jersey laboratory. Hanovia tests, manufactures and sells high energy lamps and associated equipment. On August 6, 1971 Orville Galligher, a laboratory technician, electrocuted himself while conducting an experiment. The Secretary's investigation and citation followed. When Hanovia contested the citation a hearing was held before an administrative law judge pursuant to 29 U.S.C. § 661(i), who made findings that:

> "9. The [Secretary's] inspection disclosed that on August 6, 1971 the late Orville L. Galligher was working in proximity to high voltage with the cover on the service box open and wires tapped into the service box. In addition thereto, the terminals of the capacitators in the workplace referred to, were not covered and metal parts were not grounded.
>
> . . . . . .
>
> 16. On August 6, 1971, Hanovia failed to furnish its employee, the late Orville L. Galligher, employment and a place of employment free from recognized hazards that were causing or likely to cause death or serious physical harm to its employee, when it allowed him to work in proximity to, and with, high voltage, with the cover of the service box open, with wires tapped into the service box; with the

---

1. The reference to 5 U.S.C. § 554 is to the section of the Administrative Procedure Act specifying the method of conducting adjudicatory hearings.

terminals of the capacitators not covered; and metal parts ungrounded, in a workplace as shown in Plaintiff's Exhibit # 2; and Galligher was left to work alone, without proper supervision.

17. The respondent alleges and the Judge believes that the late Mr. Galligher personally installed those conditions that made the workplace hazardous.

.    .    .    .    .    .

21. It would take at least 45 minutes of work for the late Mr. Galligher to have created the condition which constituted the employment hazard. In addition thereto, the materials used in creating the hazardous condition was transported from the respondent's other premises some distance away, in the stockroom at 100 Chestnut Street. He would have had to travel through the corridor and would have had to sign a requisition for the equipment used."

(Tr. at 22, 23, 24, 106, 117, 118, 119, 186. *See* Appendix at 26–28.)

The Administrative Law Judge made a conclusion of law that:

"5. Hanovia violated the General Duty Clause of the Act (Section 5(a)(1) thereof), by providing its late employee Galligher employment and a place of employment that contained recognized hazards that were likely to cause death or serious physical harm in a manner described in Findings # 9 and # 16 .    .    .    ."

(Decision of the Administrative Judge at 10. *See* Appendix at 31.)

Hanovia never contested that the condition described in Finding # 9 was a recognized hazard. There is expert testimony by the Secretary's compliance officer that the described condition is "a classical, fundamental, basic illustration as to what not to do, and it couldn't have been done better had you tried." (Tr. at 24). Indeed Dr. Otto Lienhard, Hanovia's Research Director in charge of lamp engineering and Mr. Galligher's supervisor, testified:

"Q So what was your reaction to this hazardous condition?

A I was shocked, because I hadn't expected anything like that." (Tr. at 136).

The evidence is also undisputed that Galligher, an experienced technician, had worked for Hanovia for 21 years, including 14 years with high voltage equipment, that during his entire 21 years he had an accident-free record, had worked under Lienhard's supervision for 10 years, and had never been observed by Lienhard to do anything unreliable or unsafe. The record establishes unequivocally that Hanovia did not know that Galligher had set up the test equipment in the manner described in Finding # 9. In reviewing the Administrative Law Judge's decision, Commissioner Burch wrote for the Commission:

"The only question that remains is whether or not respondent could with the exercise of reasonable diligence, know of the presence of the violation. The Secretary maintains that the violation could not have taken place if the decedent had been adequately supervised. We find no merit to this argument. While close supervision may be required in some cases to avoid accidents, it is unrealistic to expect an experienced and well-qualified laboratory technician to be under constant scrutiny. Such a holding by the Commission, requiring that each employee be constantly watched by a supervisor, would be totally impractical and in all but the most unusual circumstances, an unnecessary burden.

The hazardous condition in this case resulted from circumstances over which respondent had no control. As we have often stated, just as each violation need not result in an accident, neither does the mere fact that an accident occurred indicate that there was a violation." (Decision of the Commissioner at 3. *See* Appendix at 37).

Although neither the Commission opinion nor the Administrative Law Judge's decision refer to it, there is evidence in

the record suggesting the possibility that on August 6, 1971 Mr. Galligher was, unknown to his employer, under some unusual emotional stress.

The Secretary points to testimony by its compliance officer as to six steps which, had they been taken, might have prevented Mr. Galligher's electrocution. Hanovia might have (1) provided a lock-out system for the service box power source; (2) provided enclosures for energized terminals; (3) required that testing technicians work in teams of two; (4) had a supervisor frequently inspect progress of testing operations; (5) provided a detailed and comprehensive written manual for lab technicians performing electrical tests; and (6) appointed a competent person as safety manager to enforce safe practices and establish accountability for safety. (Petitioner's brief at 5). Since the evidence establishes that it was Galligher who in violation of universally recognized safety standards set up the test apparatus which produced the hazardous condition, it is difficult to see the significance of steps (1) and (2).[2] Likewise, since Galligher's violation of universally recognized safety standards with which a technician of his experience must have been familiar created the hazard, it is difficult to attach significance to steps (5) and (6) in the context of the violation charged. The real thrust of the Secretary's petition is that the additional supervision and attendance suggested by steps (3) and (4) was required by the general duty clause of § 5(a)(1), 29 U.S.C. § 654(a)(1). He contends that in rejecting the contentions that Galligher should have been more closely supervised and should not have been left to work alone the Commission misinterpreted § 5(a) as a matter of law. The Commission, on the other hand, contends that its conclusion, that constant supervision of a laboratory technician of Galligher's experience and record would be impractical and an un-

necessary burden, is a finding of fact amply supported by substantial evidence in the record as a whole.

■ It is appropriate to distinguish at the outset the issue whether the Secretary, acting pursuant to § 6 of the Act, 29 U.S.C. § 655, might impose by rule, standards of continuous supervision and team work for employees in high voltage laboratories. If such a rule were challenged the enigmatic standard for judicial review of rule making under the Act set forth in § 6(f), 29 U.S.C. § 655 probably would apply. *See, e. g.,* Dry Color Manufacturers' Association, Inc. v. Department of Labor, 486 F.2d 98 (3d Cir. 1973); Associated Industries of New York State Inc. v. United States Department of Labor, 487 F.2d 342 (2d Cir. 1973). *See also* Morton v. Delta Mining, Inc., 495 F.2d 38 (3d Cir. 1974). We may also distinguish the separate problem of a conflict between the Secretary and the Commission as to the proper interpretation of a safety standard, which may involve the statutory allocation of the rule making power (in the Secretary) and the adjudicatory function (in the Commission). *See, e.g.,* Brennan v. Southern Contractors Service, 492 F.2d 498 (5th Cir. 1974); Brennan v. Occupational Safety & Health Review Commission (Gerosa, Inc.), 491 F. 2d 1340 (2d Cir. 1974). Citations under § 10 for violation of the general duty clause involve administrative adjudications rather than rule making, and petitions for review in general duty clause cases involve more or less traditional standards for reviewing adjudications under a statute. Section 11(a), 29 U.S. C. § 660, states that we must afford to the Commission's fact-finding the same deference as to the fact-finding of such agencies as the National Labor Relations Board. *See, e.g.,* Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N.L.R.B. v. Princeton Inn Company, 424 F.2d 264

---

2. The expert did suggest a dual lock system for power sources with one key controlled by a second person. That would not have prevented Galligher, once the power source was unlocked, from setting up the test in the manner which caused his death.

(3d Cir. 1970). But aside from findings of fact it seems clear that we can set aside Commission adjudicatory conclusions which we find to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See, e.g.*, Brennan v. Occupational Safety & Health Review Commission (Interstate Glass Co.), 487 F.2d 438, 442 (8th Cir. 1973); Brennan v. Occupational Safety & Health Review Commission (Bill Echols Trucking Co.), 487 F.2d 230 (5th Cir. 1973). This being so, our starting point must be the scope of the duty imposed by the general duty clause of the Act, § 5(a)(1), 29 U.S.C. § 654, in the context of the hazard in question.

■ The statute imposes the duty of furnishing "employment and a place of employment . . . free from recognized hazards . . . ." 29 U.S.C. § 654(a)(1). Textually this language might be construed as imposing strict liability for a serious violation on an employer for the mere existence of a "recognized hazard" such as the hazards set forth in Finding # 9. Certainly these are "recognized" by any industry utilizing high voltage electricity. But Congress apparently did not intend to impose strict liability in this sense. The purpose clause of the Act declares it to be the congressional purpose "to assure *so far as possible* every working man and woman in the Nation safe and healthful working conditions." 29 U.S. C. § 651(b) (emphasis added). The italicized language suggests that the duty imposed by § 5(a)(1) must be a duty which is capable of achievement. Moreover the definition of serious violations in § 17(k) of the Act, 29 U.S.C. § 666(j) is qualified by the requirement that the employer "with the exercise of reasonable diligence, know of the presence of the violation." Thus we do not construe the general duty clause of § 5(a)(1) as imposing strict liability for a § 17 penalty for the results of idiosyncratic, demented, or perhaps suicidal self-exposure of employees to recognized hazards. On the other hand we agree with the Secretary that the general duty clause imposes a statutory duty to attempt to prevent hazardous conduct by employees.

In National Realty & C. Co. Inc. v. Occupational Safety & Health Review Commission, 489 F.2d 1257 (D.C.Cir. 1973) Judge Skelly Wright addresses the extent of an employer's obligation under the general duty clause to prevent such conduct. Recognizing that it is impossible to eliminate totally all hazardous conduct by employees, he recognizes, as well, that the employer has a duty at least to suppress such conduct in foreseeable instances. We borrow his language:

"This seeming dilemma is, however, soluble within the literal structure of the general duty clause. Congress intended to require elimination only of preventable hazards. It follows, we think, that Congress did not intend unpreventable hazards to be considered 'recognized' under the clause. Though a generic form of hazardous conduct, such as equipment riding, may be 'recognized,' unpreventable instances of it are not, and thus the possibility of their occurrence at a workplace is not inconsistent with the workplace being 'free' of recognized hazards.

Though resistant to precise definition, the criterion of preventability draws content from the informed judgment of safety experts. Hazardous conduct is not preventable if it is so idiosyncratic and implausible in motive or means that conscientious experts familiar with the industry, would not take it into account in prescribing a safety program. Nor is misconduct preventable if its elimination would require methods of hiring, training, monitoring, or sanctioning workers which are either so untested or so expensive that safety experts would substantially concur in thinking the methods unfeasible. . . . The

record must additionally indicate that demonstrably feasible measures would have materially reduced the likelihood that such misconduct would have occurred." (footnotes omitted) 489 F. 2d at 1266–1267.

In *National Realty* the District of Columbia Circuit reversed the Commission's decision and order finding a serious violation in equipment riding on a construction site because the Secretary had not established by evidence what additional feasible safety steps the employer might have taken, and the record, therefore, lacked substantial evidence of the violation. Thus the court interpreted the general duty clause, as a matter of law, as imposing the duty of adopting demonstrably feasible measures for materially reducing the likelihood of a particular employee misconduct. It then reviewed the record for substantial evidence that there were such measures, and found none. Since the Secretary had not carried his burden the Commission order was reversed.

This case differs from *National Realty* in two respects. In *National Realty* the Commission had upheld the Secretary's citation whereas here it was vacated. In *National Realty* there was no evidence bearing upon the existence of feasible measures for reducing the employee misconduct in question. Here there is testimony by the Secretary's expert that the employer could have had two technicians in attendance during the test, and that Galligher's supervisor could have examined the progress of the test more frequently. The Administrative Law Judge attached significance to this testimony, making a finding (Finding # 16) of a serious hazard that "Galligher was left to work alone, without proper supervision." The Commission did not, however, accept this finding.

■ As to the degree of supervision, there is evidence that Galligher was in fact supervised by Lienhard, a competent supervisor, at least daily, and that such supervision had in the past sufficed to preserve Galligher's accident free record and his regular compliance with industry standards for the avoidance of electrical hazards. The Secretary's expert, while suggesting closer supervision, made no showing as to the appropriateness of any more frequent supervision than daily. He did suggest that the laboratory set-up for every test be first inspected by a supervisor before being energized, but he offered no testimony as to the feasibility of such a step when periodic or routine tests are conducted by experienced technicians. Thus we conclude that the Commission's rejection of the Secretary's contention respecting closer supervision is supported by substantial evidence on the record as a whole.

■■ The Commission opinion does not deal with the suggestion by the Secretary's expert that Galligher should not have been left to work alone. If this suggestion were made without any testimony supporting its feasibility we would be inclined to hold, as did Judge Wright in *National Realty*, that the Secretary had simply not met his burden. But there is direct testimony by the expert:

"Well, I happen to know that many major companies engaged in this type of research have specific rules and regulations written down that their test technicians must follow, *and almost always they require two people in attendance on this type of experiment or test procedure.*" (Tr. 30) (emphasis added).

This, we think, is some evidence that the two-person requirement for high voltage testing is a feasible measure for materially reducing the likelihood of employee disregard of recognized electrical hazards. The Commission, unfortunately, did not deal with this phase of the case at all, and we think that in the first instance, the question of whether the Secretary has met his burden should be answered by the Commission. Since the

general duty clause is so broad, the evidence to support a charge of violation should be specific and detailed. National Realty & C. Co. Inc. v. Occupational Safety & Health Review Commission, *supra.*

Under the statutory framework the Secretary is charged with enforcement, the Commission with adjudication, and this court with judicial review. At the adjudicatory stage an administrative law judge conducts a hearing and makes a determination embodied in a report. That report becomes a final order of the Commission unless within 30 days a Commission member directs that it shall be reviewed by the Commission. 29 U.S.C. § 661(i). Such a direction was made in this case. This court is not authorized to review reports of an administrative law judge which have not become final orders of the Commission. 29 U.S.C. § 660(a), (b). We do not deem it appropriate in such a statutory framework to substitute our review of the administrative law judge's decision with respect to the two-person requirement for that of the Commission. This is not a case, such as Brennan v. Occupational Safety & Health Review Commission (John J. Gordon Co.), 492 F.2d 1027 (2d Cir. 1974), where on the record only one factual conclusion is possible, and a reversal of the administrative law judge may be set aside as an abuse of discretion. Moreover, since the amount of the penalty is a matter within the Commission's discretion, assuming a serious violation such discretion should be exercised by the Commission in the first instance. *See* Brennan v. Occupational Safety & Health Review Commission (Interstate Glass Co.), *supra,* 487 F.2d at 440.

Because the Commission simply did not deal with a significant issue in the case, its decision and order will be vacated and the case will be remanded for further proceedings.