**ACCU–NAMICS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Secretary of Labor, and John T. Dunlop, Respondent.**

No. 74–2979.

United States Court of Appeals, Fifth Circuit.

July 11, 1975.

Rehearing and Rehearing En Banc Denied Sept. 26, 1975.

David Ford Hunt, Dallas, Tex., for petitioner.

William S. McLaughlin, Exec. Sec., OSHRC, Washington, D. C., George T. Avery, Reg. Sol., Dallas, Tex., Baruch Fellner, Coun. for Reg. Litigation, Div. of OSH, Sol., Dept. of Labor, Stephen F. Eilperin, Judith S. Feigin, Dept. of Justice, Washington, D. C., for respondent.

Before GEWIN, DYER and ADAMS,* Circuit Judges.

DYER, Circuit Judge:

Accu-Namics, Inc., seeks review of a final order of the Occupational Safety and Health Review Commission finding petitioner, Accu-Namics, guilty of a "serious violation" of the Occupational

* Of the Third Circuit, sitting by designation.

Safety and Health Act (OSHA). 29 U.S.C.A. § 651 et seq.

Accu-Namics contracted in 1971 with the city of Lubbock, Texas, to lay a sewer line, which involved digging a deep, narrow trench and laying the pipe. The men working in the trench were protected by a portable shield designed to prevent cave-ins. Nevertheless, while the work was in progress the trench did cave in, and four employees were killed.

An OSHA compliance officer was working nearby and arrived on the scene about an hour after the accident while rescue operations were still in progress. He did not identify himself immediately but testified that "it might have been an hour or so" before he informed Conklin, the superintendent, who he was. He returned with the area director to complete his investigation on the following day, but found no one on the job site.

 The compliance officer, acting as the representative of the Secretary of Labor, issued a citation for a serious violation. A violation is deemded "serious" under the Act if there is a substantial probability of death or serious injury resulting from it. The employer is excused only if he did not and could not with the exercise of reasonable diligence know of the violation. 29 U.S.C.A. § 666(j).

The violation for which Accu-Namics was cited was that the workers in the trench were inadequately protected from cave-in. The bottom 21 feet of the trench wall was of soft material, and was not adequately shored or supported so as to protect employees in the trench bottom as required by 29 C.F.R. § 1926.-652(b).[1] Further, the regulations provide that where slides or cave-ins might occur as a result of adjacent backfilled excavation, "additional precautions" to shore or brace must be taken. 29 C.F.R. § 1926.-652(e).[2] The citation recites that no such precautions were taken, although a backfilled excavation of a 5-foot deep gas line existed 5.5 feet from the center line of the trench.

The trench at the cave-in site was 24 feet deep. The portable shield used to protect the workers extended 14.25 feet from the ground level down into the trench. The shield, according to the citation, was inadequate under 29 C.F.R. § 1926.653(p)[3] because it did not support the trench walls all the way to the bottom. Ten feet of trench wall where the men were working was not shielded, nor was it braced in any other manner. This was the substance of the violation.

Accu-Namics contested the citation and was given an adversary hearing before an administrative law judge (hearing examiner). The judge entered extensive findings of fact which included the finding that the cave-in was caused by the simultaneous occurrences of the following conditions:

1. The soil between 12 and 19 feet was a slightly reddish fine silty sand which had very little cohesion. Soil was friable even under finger tips.

2. The moisture content of the fine sand between 12 and 19 feet was particularly high and resulted in low shear strength.

3. The construction of the trench for the existing gas line at 4 feet away

1. 29 C.F.R. § 1926.652(b) reads in pertinent part:

 (b) Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them.

2. 29 C.F.R. § 1926.652(e) reads:

 (e) Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins when excavations or trenches are made in locations adjacent to backfilled excavations, or where excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source.

3. 29 C.F.R. § 1926.653(p) reads:

 (p) "Trench shield"—A shoring system composed of steel plates and bracing, welded or bolted together, which support the walls of a trench from the ground level to the trench bottom and which can be moved along as work progresses.

created a weak vertical plane. The bond between the filled-in soil in the trench and the original undisturbed soil was so small as to cause a top tensile zone in soil, as the sewer trench was cut.

4. The wheel carrying the weight of the shield and gravel hopper acted as a concentrated load at the above vertical plane.

The judge, however, made no finding as to the employer's culpability under the Act. He held instead that the Secretary had violated both the Act and his own regulations by failing to advise Accu-Namics of the inspection "until it was completed," [4] and by failing to accord the employer "walkaround" rights.[5] The judge further held that these omissions by the Secretary violated "basic fairness and procedural due process inherent in the Act." He concluded that this violation required that the citation and proposed penalty be vacated.

■ The Act provides that the hearing examiner is to make a "report" of his determinations "which constitutes his final disposition of the proceedings." This report becomes the final order of the Commission in 30 days, unless within that period any Commission member directs review by the Commission. 29 U.S.C.A. § 661(i). In this case, a Commission member did direct such a review and the parties were notified as follows:

The undersigned hereby directs review of the recommended decision and orders in the captioned case pursuant to section 12(j) of the Occupational Safety and Health Act of 1970 (29 U.S.C.A. § 661(i)).

Submissions are invited on the following issue:

Whether the Judge properly interpreted and applied sections 8(a) and 8(e) of the Act in this case.

Upon the consideration of the case, the Commission reversed the administrative law judge on the procedural questions of credentials (section 8(a)) and walkaround rights (section 8(e)). It then moved to the merits, specifically adopted the judge's findings of fact, and held that

4. Section 8(a) of the Act, 29 U.S.C.A. § 657(a), provides:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

The supplementing regulation, 29 C.F.R. § 1903.7(a), provides in pertinent part:

(a) . . . At the beginning of an inspection, Compliance Safety and Health Officers shall present their credentials to the owner, operator, or agent in charge at the establishment; explain the nature and purpose of the inspection; and indicate generally the scope of the inspection and the

records specified in § 1903.3 which they wish to review.

5. Section 8(e) of the Act, 29 U.S.C.A. § 657(e), provides:

(e) Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

The supplementing regulation, 29 C.F.R. § 1903.8(a), provides in pertinent part:

(a) Compliance Safety and Health Officers shall be in charge of inspections and questioning of persons. A representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Compliance Safety and Health Officer during the physical inspection of any workplace for the purpose of aiding such inspection.

Accu-Namics was guilty of a serious violation, reinstating the original citation and $500 penalty. Accu-Namics appeals this final order under Section 11(a) of the Act. 29 U.S.C.A. § 660(a).

Our analysis begins with the question whether the Commission properly interpreted and applied Section 8(a) and 8(e) of the Act. If it was correct, then we must decide whether it was proper for the Commission, at least in this case, to reach the merits rather than remand. If it was proper, then the final question is the usual one for our review of the merits: whether the decision of the agency is supported by substantial evidence on the record considered as a whole. 29 U.S.C.A. § 660(a); Ryder Truck Lines, Inc. v. Brennan, 5 Cir. 1974, 497 F.2d 230, 232. We answer all these questions in the affirmative.

First, we turn to the interpretation and application of Sections 8(a) and 8(e). As to Section 8(a), credentials, the Commission held that there is no mandatory requirement for an inspector to present credentials when, as here, the work place is open to the public. Further, the Commission held that even if the requirement is mandatory, it was substantially complied with when the inspector verbally identified himself to the superintendent at the site. Finally, even if there was a technical failure to comply with the statute, it was harmless error to hear the evidence obtained by the investigation because there was preponderant evidence *aliunde* to support the violation.

As to Section 8(e), the Commission recited in its opinion that it has held the "walkaround" requirement to be directory rather than mandatory.[6] The Commission said that, for the employer and employee representatives to have accompanied the inspector would probably have been helpful, but under the circumstances it was highly impractical. Further, said the Commission, it will not "invoke the extreme sanction of vacating a citation for failure to comply with section 8(e)" unless there is a showing of prejudice. Here there was not even an allegation of prejudice on the part of the employer.

With regard to these two provisions, then, the Commission has covered all its legal bases, defending under all theories its view that any violation the Secretary may have committed does not negate the employer's violation. We need not go so far. We need not decide whether the inspector violated Section 8(a), nor whether if he did it was harmless error, nor whether Section 8(e) is directory or mandatory. We await the proper case for decision of these questions. We merely hold that even if the Secretary conducted an illegal inspection (which we assume only for argument's sake), under the circumstances here these violations cannot operate to exclude evidence obtained in that inspection when there is no showing that the employer was prejudiced in any way.[7] Here, Accu-Namics contends that its constitutional right to procedural due process has been infringed. But it would have us adopt an exclusionary rule which would exclude all evidence obtained illegally, no matter how minor or technical the governmental violation, and no matter how egregious or harmful the employer's safety violation. This we refuse to do. The manifest purpose of the Act, to assure safe and healthful working conditions, militates against such a result. 29 U.S.C.A. § 651; Brennan v. OSHRC (J. W. Bounds), 5 Cir. 1973, 488 F.2d 337, 338. There has been no violation of the employer's fourth amendment right here; the jobsite was on a public street. There is no showing that the

---

6. The cases to which the Commission refers are Chicago Bridge and Iron Co., Jan. 19, 1973, No. 224, and Wright-Schuchart Harbor Contractors, Feb. 15, 1973, No. 559.

7. *See* Brennan v. OSHRC (Bill Echols Trucking Co.), 5 Cir. 1973, 487 F.2d 230, 236, in which this Court said:

Commission decisions . . . apparently have recognized that at least a finding of prejudice to the employer must precede dismissal of a proposed penalty for violation of a procedural rule.

inspector looked where he had no right to look, nor that he filched information to which he was not entitled, had he shown his credentials. There is no showing that, had employer and employee representatives accompanied him, any further material or mitigating facts might have emerged. Accu-Namics had the opportunity before the hearing examiner to present any such evidence and to cross-examine the inspector. At oral argument, counsel failed to indicate any specific way in which Accu-Namics was prejudiced. Therefore, because Accu-Namics has shown no harm resulting from the Secretary's alleged violations of the Act, we decline to adopt any sweeping exclusionary rule that would exclude the facts regarding the violation. We affirm the Commission's holding that if the Secretary violated the Act in the manner alleged, it did not justify vacating the citation.

The next question, somewhat novel, is a procedural one. Accu-Namics urges that the Commission had no right, having ordered a review and invited submissions on the 8(a) and 8(e) question, to proceed to a decision on the merits when the administrative law judge had made no conclusions as to the safety violation. The Commission should have remanded, urges Accu-Namics. Normally, were this a trial judge and an appellate court, that procedure would be followed. Presumably, that would be the normal situation at the Commission as well if additional evidence were needed. However, there are several reasons for viewing this situation differently.

▮▮▮ First, the statutory scheme contemplates that the *Commission* is the fact-finder, and the judge is an arm of the Commission for that purpose. The statute provides that the Commission chairman is to appoint such hearing examiners as he deems necessary to assist in the work of the Commission. 29 U.S.C.A. § 661(d). The hearing examiner (also called "judge," 29 C.F.R. § 2200.-1(f)) is to hear and "make a determination upon" the proceedings and

shall make a report of any such determination which constitutes his final disposition of the proceedings.

29 U.S.C.A. § 661(i). This "report" becomes the final order of the Commission within thirty days unless a Commission member directs review within that time. *Id.* When it notified the parties in this case that the decision would be reviewed, the Commission referred to the judge's report as a "recommended decision." The regulations provide that the decision of the judge is to include findings of fact, conclusions of law, and an order. 29 C.F.R. § 2200.90(a). Upon issuance of the decision, jurisdiction rests solely in the Commission. 29 C.F.R. § 2200.90(b). The regulations provide that a party aggrieved by the judge's decision may petition for discretionary review by the Commission, 29 C.F.R. § 2200.91, but a party has neither the right to review by the Commission, nor the right to present additional material or oral argument on any matter. 29 C.F.R. § 2200.93. The Court of Appeals reviews only the final order of the Commission, and the Commission's findings of fact are conclusive if supported by substantial evidence. 29 U.S.C.A. § 660(a).

▮▮▮ This overview of the statute and regulations demonstrates that the Commission itself is charged with findings of fact. The judge's "decision" is merely a report, weighty of course, but not final until the Commission allows it to become so by inaction. Once the Commission decides to review, it may review the entire record, including transcript, briefs, proposed findings, motions, and the like. Here, although the Commission invited submission on two questions, this cannot be construed as a limitation on its review power. The parties had an opportunity to be fully heard at the hearing before the administrative law judge; their opportunity for full review is before this Court.

It should be noted that we are not confronted here with the common problem of an agency which disagrees on the facts with its own hearing examiner.

*See* Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Here the Commission *adopted* the judge's findings of fact. This brings us to the final question, whether these findings are supported by the record.

 Reviewing courts are bound to apply the substantial evidence test to the Commission's findings of fact. 29 U.S. C.A. § 660(a); Ryder Truck Lines, Inc. v. Brennan, *supra*; Beall Construction Co. v. OSHRC, 8 Cir. 1974, 507 F.2d 1041, 1046; Brennan v. OSHRC (Hanovia Lamp Division), 3 Cir. 1974, 502 F.2d 946, 950–51. If there is substantial evidence in the record to support the finding of a serious violation, the order must be affirmed. Ryder Truck Lines, Inc. v. Brennan, *supra*; American Smelting & Refining Co. v. OSHRC, 8 Cir. 1974, 501 F.2d 504; REA Express, Inc. v. Brennan, 2 Cir. 1974, 495 F.2d 822, 825; National Realty & Construction Co., Inc. v. OSHRC, 1973, 160 U.S.App.D.C. 133, 489 F.2d 1257, 1260.

The causes of the cave-in were listed above. Based on the judge's findings that the walls of the trench at 12 to 19 feet were crumbly sand with little cohesion and low shear strength, and that the nearby backfilled gas line weakened the vertical plane, the Commission concluded that the soil was unstable and that the trench shield alone afforded inadequate protection. There is substantial evidence in the record to support all of these findings. The judge's findings as to the causes of the cave-in were taken almost verbatim from the testimony of Accu-Namics' own expert. The shield was indisputably too short to protect against the entire trench wall. There is no question that there is a substantial probability of death or serious injury resulting from a cave-in of this sort. Therefore, the only real dispute is whether the employer should be excused from the serious violation, that is, whether he knew or should have known it existed.

Although the evidence is contradictory on this question, there is substantial evidence to support the Commission. Accu-Namics' expert testified that one could see that the sand was friable (crumbly) merely by inserting a small shovel into the trench wall. Further, although there was some confusion that precisely how far away it was, there is no question that the employer knew that the backfilled gas line was nearby and could cause serious problems. Once it is determined that a shield (or some other protective measure) is required, then it must meet the standard requirements of 29 C.F.R. § 1926.653(p),[8] which this one clearly failed to do.

Thus, we find substantial evidence to support the Commission's finding of a serious violation.

Affirmed.