**DEPARTMENT OF LABOR, Now J.R. Gray as Secretary of Labor Cabinet, Appellant,**

v.

**HAYES DRILLING, INC., and Commonwealth of Kentucky, Occupational Safety And Health Review Commission, Appellees.**

No. 2010–CA–000021–MR.

Court of Appeals of Kentucky.

Sept. 2, 2011.

James R. Grider, Jr., Office of General Counsel, Kentucky Labour Cabinet, Frankfort, KY, for appellant.

Thomas M. Moore, Kansas City, MO, Tammy Meade Ensslin, Lexington, KY, for appellee, Hayes Drilling, Inc.

Frederick G. Huggins, General Counsel, Kentucky Occupational Safety and Health Review Commission, Frankfort, KY, for appellee, Kentucky Occupational Safety And Health Review Commission.

Before ACREE, LAMBERT and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

The substantive issues presented concern the issuance of a citation and imposition of penalties under the Kentucky Occupational Safety and Health Act (KOSHA), Kentucky Revised Statutes (KRS) 338.011 through 338.991 upon Hayes Drilling Inc., a subcontractor working at a multi-employer work site. After the Franklin Circuit Court reversed the decision and order of the Kentucky Occupational Review Commission, the Kentucky Department of Labor appealed. The issues presented are: (1) whether the Department's failure to provide Hayes an opportunity to be present for the opening conference and the walk around inspection mandated dismissal of the citation; (2) whether the citation issued was invalid because the abatement date was prior to its issuance; (3) whether Hayes was a creating or controlling employer on a multi-employer work site; (4) whether the contract between Hayes and Wilburn relieved Hayes of responsibility for KOSHA violations; and (5) whether the intentional removal of a hole cover precluded the citation.

## FACTS

The citation was issued after an April 19, 2005, accident on a construction site at Bryan Station High School in Lexington, Kentucky, which resulted in an injury to Billy Evans, an employee of River City, a masonry subcontractor.

The general contractor on the project, D.W. Wilburn, Inc., and Hayes executed a contract pursuant to which Hayes agreed to drill caisson holes that later became part of the building's foundation. The contract contemplated that Hayes would drill

approximately 800 holes. Once drilled, Wilburn was responsible for filling the holes with concrete and reinforcing steel. There was no provision in the contract that obligated Hayes to barricade the holes and, until the creation of the hole into which Evans fell, Wilburn established a pattern of protecting the caisson holes by building barricades.

On the date of Evans's injury, Hayes drilled an eighteen-feet deep and thirty-six inches wide hole as instructed by Wilburn. On the same date and time, Evans was putting block on a section of the building approximately fifty to sixty feet from the drilling location.

After the first hole was completed and because Wilburn's employees were not present to barricade the hole, the Hayes drill operator directed a Hayes laborer to place unmarked plywood over the hole as a temporary cover. The workers then proceeded to drill on a second hole, twenty feet from the first hole.

Within approximately ten minutes of the completion of the first hole, Evans, who was operating a sky track fork lift truck, noticed the plywood and exited the truck to remove the plywood so that he would not run over it. He testified that he was unaware that the plywood was being used to cover a hole. When Evans lifted the plywood, he fell into the hole and broke his ankles.

On July 6, 2005, Compliance Officer Shannon Dowdell inspected the project site. At that time, Hayes had completed its work and departed. As a result, Hayes did not receive notice of the inspection and had no representatives at the site. It did not attend the opening conference or walk around inspection but did attend the closing conference where it learned about the possible citations.

Three separate sets of serious citations were issued to Wilburn, Hayes, and River City pursuant to the fall protection subpart of the construction standards. Section 29 CFR 1926.501(b)(4)(i) states: "Each employee on walking/working surfaces shall be protected from falling through holes ... more than 6 feet ... above lower levels, by personal fall arrest systems, covers, or guardrail systems erected around such holes." Hayes was cited for the following specific violations of the KOSHA regulations found at 29 CFR 1926.502(i)(1), (3) and (4), adopted in Kentucky by 803 KAR 2:412:

(1) Covers located in roadways and vehicular aisles shall be capable of supporting, without failure, at least twice the maximum axle load of the largest vehicle expected to cross over the cover.

(3) All covers shall be secured when installed so as to prevent accidental displacement by the wind, equipment, or employees.

(4) All covers shall be color coded or they shall be marked with the word "HOLE" or "COVER" to provide warning of the hazard.

The hearing officer dismissed Item 1 of the citation and affirmed the remaining two items. The Commission affirmed and Hayes appealed to the Franklin Circuit Court. The circuit court reversed and this appeal followed.

## STANDARD OF REVIEW

An agency decision must be affirmed unless the agency acted arbitrarily or outside the scope of its authority, applied an incorrect rule of law, or if the decision itself is not supported by substantial evidence in the record. *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 300–301 (Ky.1972). When reviewing issues of law, the court's review is *de novo* without any deference to the agen-

cy. *Mill St. Church of Christ v. Hogan,* 785 S.W.2d 263, 266 (Ky.App.1990). However, the court's review of factual issues is limited to an inquiry of "whether the agency's decision was supported by substantial evidence or whether the decision was arbitrary or unreasonable." *Cabinet for Human Res., Interim Office of Health Planning and Certification v. Jewish Hosp. Healthcare Servs., Inc.,* 932 S.W.2d 388, 390 (Ky.App.1996). Substantial evidence means "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens—Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky. 1998).

## ANALYSIS

■ Preliminary to our analysis of the issues presented, we observe that KOSHA is patterned after its federal counterpart, the Federal Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C.A. §§ 651–678 (2001), and enacted for the purpose of providing "safe and healthful working conditions...." *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). To implement the statutory purpose, obligations are imposed on employers to comply with a "general duty clause" requiring that the employer free the workplace of all recognized hazards, 29 U.S.C. § 654(a)(1), and a "special duty clause" which requires compliance with mandatory occupational safety and health standards issued by the Secretary, 29 U.S.C. § 654(a)(2). *Brock v. L.E. Myers Co., High Voltage Div.,* 818 F.2d 1270, 1275 (6th Cir.1987). The general duty clause was enacted to cover serious hazards not otherwise covered by specific regulations. *Teal v. E.I. DuPont de Nemours and Co.,* 728 F.2d 799 (6th Cir.1984). Because Hayes was cited for violating a specific duty under KOSHA, we are not concerned with the general duty clause.

■ Finally, prefatory to our discussion, we add that KOSHA is substantially identical to the Federal Act. Pursuant to KRS 338.061(2), the Kentucky Occupational Safety and Health Standards Board is authorized to adopt federal standards for occupational safety and health and Kentucky courts look to Federal decisions for guidance. *See Ky. Labor Cabinet v. Graham,* 43 S.W.3d 247, 253 (Ky.2001) (abrogated on other grounds by *Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004)).

1. **Whether the citations are invalid because Hayes was not afforded the opportunity to attend the opening conference or walk around inspection.**

■ The circuit court agreed with Hayes' contention that it was denied due process when the Department conducted its investigation without a Hayes representative at the site for the opening conference or for the inspection. We disagree.

KOSHA and OSHA contain provisions that afford the employer walk around privileges. KRS 338.111 states:

A representative of the employer and a representative authorized by the employees shall be given an opportunity to accompany the representative of the commissioner during the physical inspection of any place of employment as authorized by KRS 338.101. If there is no authorized employee representative available at the time of inspection, the commissioner's representative shall consult with a reasonable number of employees concerning matters of occupational safety and health in the place of employment. The representative of the commissioner shall be in full charge of the inspection, including the right to limit the number of representatives on the inspection team.

Section 8(e) of the Federal Act, 29 U.S.C. § 657(e) contains an identical provision. Additionally, 803 KAR 2:070 Section 4 provides for opening and closing conferences.

Initially, we clarify that although presented as a due process claim, Hayes has failed to present any authority that a violation of KRS 338.111 is necessarily a deprivation of due process.[1] Confronted with a similar argument, the Court, in *Sierra Resources, Inc. v. Herman,* 213 F.3d 989 (7th Cir.2000), astutely pointed out that there is no basis in the law for the assumption that every statutory or regulatory violation of a procedural nature necessarily includes a due process violation. *Id.* at 992–993.

Due process requires that Hayes be afforded notice and an opportunity to respond to the citations, not the opportunity to attend the opening conference or participate in the walk around inspection. It is a privilege conferred by statute, not the Constitution. *Id.* Contrary to Hayes' due process contention, a lengthy evidentiary hearing was held at which Hayes defended against the citations. Thus, the issue presented is not properly framed as one with constitutional implications. However, it remains to be decided whether the citation was issued in violation of KRS 338.111 and, if so, whether the citation was *void ab initio.*

The circuit court relied on *Chicago Bridge & Iron Co. v. OSHRC,* 535 F.2d 371, 375 (7th Cir.1976), and found that the citation issued to Hayes was void. After a review of that case and similar authority, we disagree with the circuit court's interpretation.

In *Chicago Bridge & Iron Co.,* the Court held that the walk around provisions of OSHA are mandatory and should not be

eroded by holding that the statute is merely directory. *Id.* However, the Court's analysis did not end.

It ultimately concluded that the failure to provide the employer with a walk around opportunity does not render the citation void. Instead, where there has been substantial compliance with the provision and the employer was not prejudiced by the denial of its walk around, the citation is valid. The Court explained:

> We agree with the company that it is desirable that employers' representative be present when inspections of their work areas are conducted. We do not agree, however, that the absence of a formalized offer of an opportunity to accompany the compliance officer on his inspection renders the citations for violations observed void ab initio. This result we believe would frustrate the purpose of the Occupational Safety and Health Act of 1970 which is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources."

*Id.* at 376 (citation and footnote omitted).

Federal courts in the Fifth and Eighth Circuits have likewise held that the failure to provide a walk around does not void a citation. In *Accu–Namics, Inc. v. OSHRC,* 515 F.2d 828, 834 (5th Cir.1975), the Court held that in the absence of prejudice to the employer, an illegal inspection will not operate to exclude evidence obtained. The Court reasoned that to hold otherwise would frustrate the assurance of safe and healthful working conditions. *Id.* Following the same logic, the Eighth Circuit has held that when there is no preju-

---

1. There is no suggestion that the Fourth Amendment prohibiting warrantless searches is implicated. *See Marshall v. Western Waterproofing Co., Inc.,* 560 F.2d 947 (8th Cir.1977)

(holding that an employer who has common or controlling authority on the worksite had authority to give consent to the inspection of the site).

dice to the employer, the evidence obtained by the inspection should not be suppressed. *Marshall,* 560 F.2d 947. The Court noted that compliance with the provision is not jurisdictional, thus, a remedy for its violation should not needlessly inhibit the primary purpose of OSHA. *Id.* at 952.

■ In this case, Hayes has failed to demonstrate that if present for the opening conference and the walk around inspection, the inspection would have revealed different facts or aided its defense. Moreover, Hayes was not an on-site employer when the inspection was conducted. We again turn to *Chicago Bridge & Iron Co.* for guidance.

In the federal case, Chicago Bridge & Iron Co. was a prime contractor on a nuclear power plant constructed by Commonwealth Edison Company. The work site covered twenty-six acres and over fifty subcontractors were involved in the project. When the compliance officer arrived, the site employer and employee representatives were selected from the two largest contractors on the site who had primary control over the entire project. Chicago Bridge & Iron Co. was not among those employers selected. *Id.* at 373.

The federal court pointed out the difficulty in affording the opportunity to every contractor on a large work site. Significant to the present case, the court emphasized that affording walk around opportunities to employers who are absent from the work site would pose significant impediments to the enforcement of OSHA standards.

[I]f citations issued without strict adherence to procedural provisions of the Act were void ab initio, the result of an

inspection citation issued after the completion of such a tour in which certain employers were not available at the site either because they did not know of the inspection or because the situation was such that they were called to another location would also be void. If the compliance officer wanted to ensure that his citations would not be flawed, he would have to either reschedule the inspection of that employer's part of the site or suspend the progress of the inspection of the site until the return of the employer's representative.

*Id.* at 377. The Court concluded that advance notification of an inspection to off-site employers would frustrate the purpose of a view of the work area as it normally exists. *Id.*

■ In this case, Hayes had permanently departed the work site when the compliance officer conducted her investigation and, therefore, could only be present if given advance notice. As noted in *Chicago Bridge & Iron Co.,* advance notice defeats the purpose of assuring a safe and healthful work site by an inspection conducted under usual work site conditions. The Kentucky General Assembly has recognized the significance of viewing a work site in its usual condition. Pursuant to KRS 338.101, the Department has the authority to enter a work site during regular working hours without advance notice.[2]

Instead, the primary contractor who was present and in control of the work site was afforded the opportunity to attend opening conference and walk around inspection. Under the circumstances, we conclude that the failure to comply with KRS 338.111 does not void the citation.

---

**2.** Again, we point out that no allegation is made that the compliance officer inspected the premises without the consent of the on-

site employers. *See Yocom v. Burnette Tractor Co., Inc.,* 566 S.W.2d 755 (Ky.1978).

### 2. Whether the citation was invalid because the hazard was abated before the citation was issued.

■ There was testimony that the hole was barricaded within fifteen to thirty minutes after Evans fell. Therefore, the citation stated that the date given to correct the hazard was April 19, 2005. Hayes contends that because the caisson holes were filled and covered on the date of the inspection and the citation stated the abatement date as April 19, 2005, the citation is void. We are not convinced that either fact voids the citation.

KRS 338.141 states that in addition to a description of the alleged violation, the citation shall "establish the time period permitted for correction by fixing a reasonable date by which the alleged violation shall be eliminated[.]" Hayes argues that the statute was violated because on August, 24, 2005, it was ordered to abate the violation on April 19, 2005. It further contends that a citation issued after a violation has been abated is contrary to the purpose of KOSHA.

The purpose of KOSHA and its federal counterpart is to prevent the first accident. *Mineral Industries & Heavy Construction Group v. OSHRC*, 639 F.2d 1289, 1294 (5th Cir.1981). Thus, Hayes reasons that a citation issued after an accident and abatement is only punitive in nature: Its reasoning is faulty.

If Hayes is correct and an employer can only be cited for unabated hazards, an employer can easily escape penalty after a work site accident by immediately abating the hazard prior to the compliance officer's arrival. It is unnecessary to expand our point further but merely state that it is KOSHA's purpose to prevent the first accident and recurring accidents. In this case, the citation acknowledged that the alleged violation had been eliminated on April 19, 2005, and consequently, Hayes was informed that abatement was not an issue. The statutory requirements were met.

### 3. Whether Hayes was a creating or controlling employer on a multi-employer work site and, therefore, responsible for KOSHA violations.

■ The Commission found that Hayes created the hazard by digging the hole and failing to adequately cover it as required by the specific KOSHA standards and, as a creating employer, was responsible for compliance with the KOSHA standards. The circuit court disagreed. Contrary to the Commission's findings, it concluded that Hayes was not responsible for barricading the holes. In the court's view, Wilburn controlled the work site and was in the best position to abate the hazard. In reliance on *Anning–Johnson Co. v. OSHRC*, 516 F.2d 1081 (7th Cir.1975), the court concluded that Hayes took reasonable steps to temporarily remedy the hazard and, therefore, could not be responsible.

■ The multi-employer work site doctrine is applicable to a construction site where there are numerous contractors. Its parameters have been described as follows:

The multi-employer doctrine provides that an employer who controls or creates a worksite safety hazard may be liable under the Occupational Safety and Health Act even if the employees threatened by the hazard are solely employees of another employer. The doctrine has its genesis in the construction industry where numerous employers, often subcontractors, work in the same general area, and where hazards created by one employer often pose dangers to employees of other employers. The Secretary has imposed liability under the doctrine since the 1970's and has steadfastly

maintained the doctrine is supported by the language and spirit of the Act. The Secretary's interpretation has been accepted in one form or another in at least five circuits, and rejected outright in only one. *See United States v. Pitt–Des Moines, Inc.,* 168 F.3d 976 (7th Cir. 1999); *R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n,* 166 F.3d 815 (6th Cir.1998); *Beatty Equip. Leasing, Inc. v. Secretary of Labor,* 577 F.2d 534 (9th Cir.1978); *Marshall v. Knutson Constr. Co.,* 566 F.2d 596 (8th Cir.1977); *Brennan v. Occupational Safety & Health Review Comm'n,* 513 F.2d 1032 (2d Cir.1975); *but see Southeast Contractors, Inc. v. Dunlop,* 512 F.2d 675 (5th Cir.1975).

*Universal Const. Co., Inc. v. OSHRC,* 182 F.3d 726, 728 (10th Cir.1999).

The employer's duty to employees of other employers is derived from OSHA's specific duty provisions. Although the general duty clause runs to the employer's employees, the specific duty provisions require that employers comply with the OSHA standards and "is in no way limited to situations where a violation of a standard is linked to exposure of his employee to the hazard." *Brennan,* 513 F.2d at 1038. In *Brennan,* the Court held that if an employer is in control of an area and responsible for its maintenance, an OSHA violation can be established by showing that hazard has been committed and the area of the hazard was accessible to the employees of the cited employer or *those of other employers engaged in a common undertaking. Id.* (emphasis added).

In *Hargis v. Baize,* 168 S.W.3d 36, 43 (Ky.2005), Kentucky expressly adopted the multi-employer work site doctrine. Agreeing with the view expressed in *Bren-*

*nan* and by the Sixth Circuit in *Teal,* 728 F.2d 799, the Court stated:

We believe that Congress [the General Assembly] enacted Sec. 654(a)(2) [KRS 338.031(1)(b)] for the special benefit of *all* employees, including the employees of an independent contractor, who perform work at another employer's workplace. The specific duty clause represents the *primary* means for furthering Congress' purpose of assuring "so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. Sec. 651(b). (Emphasis added). The broad remedial nature of the Occupational Health and Safety Act of 1970 is the Act's primary characteristic. Consistent with the broad remedial nature of the Act, we interpret the scope of intended beneficiaries of the special duty provision in a broad fashion. In our view, once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect every employee who works at its workplace.

*Id.* at 44.

Despite the applicability of the multi-employer work site doctrine, based on *Anning–Johnson Co.,* the circuit court concluded that Hayes was not responsible for the violations because it did not create the hazard and Wilburn had the primary responsibility for safety precautions. In *Anning–Johnson Co.,* the Court held that a subcontractor could not be responsible for a non-serious standard violation where it did not create, cause, or was otherwise responsible for the violation. Under those circumstances, the subcontractor's responsibility was limited to providing a reasonable and realistic response to the violation as an alternative to literal compliance with applicable safety regulations. *Electric Smith, Inc. v. Secretary of Labor,* 666 F.2d

1267, 1270 (9th Cir.1982).[3]

The case now considered is significantly distinguishable from *Anning–Johnson Co.* The Commission found that Hayes created the hazard. To support its finding, it considered the evidence that Hayes dug the caisson hole and placed plywood over the hole in violation of the occupational safety and health standards because it was not secured in place and not marked as a hazard. It also noted that on other work sites, Hayes had placed metal barriers around the holes without the assistance of carpenters. We conclude that there was substantial evidence in the record to support the Commission's finding that Hayes was the creating employer.

### 4. Whether the contract between Hayes and Wilburn precluded Hayes from being responsible for its failure to properly cover and mark the hole.

Hayes maintains that its contract with Wilburn did not obligate it to barricade the holes and, therefore, it had no responsibility for the KOSHA violation. Our initial response to Hayes' contention is that it was not cited for failing to barricade the holes. It was cited for placing the unmarked and unsecured plywood over holes which only served to conceal the hazard, not protect workers. Moreover, as the Commission pointed out, once it is determined that an employer is responsible for complying with a specific standard, it cannot contract out of its responsibility. *Frohlick Crane Service, Inc. v. OSHRC*, 521 F.2d 628, 631 (10th Cir.1975).

Before leaving this issue, we emphasize that our decision does not preclude any claim that Hayes may have for contractual indemnity against Wilburn nor do we comment as to the success of any possible claim. Our conclusion is based solely on the specific KOSHA provisions and Hayes' duty to comply with those provisions. Thus, regardless of the contractual arrangement between Hayes and Wilburn, it remains that Hayes dug the hole and provided a cover in violation of the KOSHA standards.

### 5. Whether the intentional removal of the plywood by Evans precluded the citation.

Finally, we address the circuit court's conclusion that the requirements of 29 CFR 1926.502(i)(3) were not met. The regulation requires that the cover be secured when installed to prevent accidental displacement by the wind, equipment or employees. The circuit court held that the accidental displacement requirement was not substantiated because Evans intentionally removed the plywood. We disagree. Once the unsecured and unmarked plywood was placed as a cover over a hole greater than six feet deep, Hayes violated KOSHA.

Based on the foregoing, the opinion and order of the Franklin Circuit Court is reversed.

ALL CONCUR.

---

**3.** Although *Anning–Johnson Co.* has not been expressly adopted in this Commonwealth, similar reasoning was applied in *Pennington v. MeadWestvaco Corp.*, 238 S.W.3d 667 (Ky. App.2007), where the Court held that Mead-Westvaco, a construction site owner who did not have control over the subcontractors employees or their work and where the general contractor was responsible under contract for assuring compliance with safety regulations, was not a controlling employer.