**Ray MARSHALL, Secretary of Labor, Petitioner,**

v.

**WESTERN WATERPROOFING CO., INC., and Occupational Safety and Health Review Commission, Respondents.**

**No. 76–1703.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1977.

Decided Aug. 23, 1977.

Rehearing and Rehearing En Banc Denied Sept. 21, 1977.

948

John A. Bryson, Atty., U.S. Dept. of Labor, Washington, D.C., argued, and Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., OS&H, Michael H. Levin and Stephen A. Bokat, Washington, D.C., on appendix and briefs, for petitioner.

Richard W. Miller, argued, and Thomas M. Moore, Kansas City, Mo., on brief, for respondents.

Before GIBSON, Chief Judge, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The Secretary of Labor (Secretary) filed this petition for review of an order of the Occupational Safety and Health Review Commission (Commission) which suppressed evidence obtained from an inspection which allegedly revealed unsafe working conditions.

Following an inspection of its scaffolding equipment at the Woodman Tower Building in Omaha, Nebraska, Western Waterproofing Co., Inc. (Western) was cited for violations of safety standards promulgated pursuant to the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. § 651 et seq. The original citations were issued June 19, 1972, alleging five other than serious violations and four serious violations, with total proposed penalties of $4,105.[1] Western filed a timely notice of contest and subsequently moved to suppress all evidence gained from the inspection on the grounds that the compliance officers conducting the inspection acted in violation of the Fourth Amendment to the United States Constitution, and that there was a failure to comply with sections 8(a)[2] and 8(e)[3] of the Act, and regulations issued by the Secretary implementing these sections.

An administrative law judge vacated the citations on the basis that the inspection was conducted in violation of the presentation of credentials requirement of section 8(a) and of the warrant requirements of the Fourth Amendment. Upon review, the Commission found that the inspection complied with section 8(a) and the Fourth Amendment but not with the "walkaround" provisions of section 8(e). Under the circumstances of this case the Commission held that there was a violation of section 8(e) and affirmed the administrative law judge's vacation of the citations. We have jurisdiction to hear the Secretary's appeal under section 11(a) of the Act, 29 U.S.C. § 660(a), the alleged violations having occurred in Omaha, Nebraska. We reverse.

On June 6, 1972, two of the Secretary's compliance officers were instructed by their

1. The complaint filed by the Secretary withdrew all but one of the serious and two of the nonserious citations. In his brief to the administrative law judge, the Secretary withdrew one of the remaining nonserious citations. The remaining serious citation alleged that the perimeter protection on the scaffold platform failed to conform to 29 C.F.R. § 1926.451(i)(11), which provides:

(11) Guardrails made of lumber, not less than 2 × 4 inches (or other material providing equivalent protection), approximately 42 inches high, with a midrail, and towboards, shall be installed at all open sides and ends on all scaffolds more than 10 feet above the ground or floor. Towboards shall be a minimum of 4 inches in height. Wire mesh shall be installed in accordance with paragraph (a)(6) of this section.

The nonserious citation alleged that Western had violated 29 C.F.R. § 1926.451(i)(8), which provides:

(8) On suspension scaffolds designed for a working loan of 500 pounds, no more than two men shall be permitted to work at one time. On suspension scaffolds with a working load of 750 pounds, no more than three men shall be permitted to work at one time. Each employee shall be protected by an approved safety life belt attached to a lifeline. The lifeline shall be securely attached to substantial members of the structure (not scaffold), or to securely rigged lines, which will safely suspend the employee in case of a fall. In order to keep the lifeline continuously attached, with a minimum of slack, to a fixed structure, the attachment point of the lifeline shall be appropriately changed as the work progresses.

2. Section 8(a) of the Act, 29 U.S.C. § 657(a), provides:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

3. Section 8(e) of the Act, 29 U.S.C. § 657(e), provides:

(e) Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

**950**

area director to investigate a fatal accident which had occurred the previous day at the Woodman Tower Building in Omaha. The fatality occurred when one of Western's employees fell from a scaffold on the eleventh floor to a fifth floor mezzanine after apparently suffering a seizure. Upon arrival at the building at approximately 10:30 a.m., the compliance officers presented their credentials and explained the purpose of their visit to Mr. Millen, the building manager. Mr. Millen explained that the deceased worker had been an employee of Western but that no agent or official of that company was on the premises. The compliance officers requested Mr. Millen to contact the Western official who was in charge of the job. Mr. Millen then left the room and when he returned he said that he had been unable to contact a Mr. Meehan, one of Western's job supervisors.

After being informed that the scaffold was going to be removed that day after working hours, the compliance officers proceeded to inspect the scaffold. They were accompanied on the inspection by the building manager. The officers examined the fifth floor mezzanine to which the employee had fallen, and the roof area which contained the scaffold supports. They also viewed the scaffold from a window in an attorney's office on the eleventh floor outside of which the scaffold was positioned. The officers never physically touched the scaffold.

■ On the basis of these facts, Western claims that the actions of the compliance officers violated the Fourth Amendment to the Constitution, which limits the authority of government officials to conduct inspections for law enforcement purposes. *See Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Generally, a person who exercises control over premises may consent to a search and evidence gathered in that search may be used against persons who did not consent. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Kirvelaitis v. Gary*, 513 F.2d 213 (6th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct.

103, 46 L.Ed.2d 80 (1975); *United States v. Gradowski*, 502 F.2d 563 (2d Cir. 1974). In *Matlock, supra*, 415 U.S. at 171, 94 S.Ct. at 993, the Supreme Court held that a search was valid where "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." The Court went on to define common authority as being where there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 94 S.Ct. at 993.

Mr. Millen, who was the representative of the owner of the building, consented to the inspection and unlocked the doors to the fifth floor mezzanine and the roof with his own keys. He then took the compliance officers to the attorney's office where they obtained permission from the attorney to enter his office to view the scaffold from his window.

In the proceedings below, the Commission concluded that the building manager exercised control over the premises inspected by the compliance officers, that he consented to the inspection and that such consent for the inspection was valid and binding against Western. Western does not claim that the inspection of the scaffold from the attorney's office was itself a violation of the Fourth Amendment. However, Western does argue that it was a fruit of the earlier, allegedly illegal inspections made from the fifth floor mezzanine and roof.

■ We agree with the Commission that "[t]he compliance officers obtained permission to go onto the roof, the 5th floor mezzanine, and the attorney's office from persons who controlled those areas and were capable of giving such consent." Accordingly, Western lacks standing to raise Fourth Amendment claims since valid con-

sent to entry upon the relevant areas had been given by others who were in control. *United States v. Matlock, supra*; *Bloomfield Mechanical Contracting, Inc. v. Occupational Safety and Health Review Comm'n*, 519 F.2d 1257, 1263 (3d Cir. 1975). Moreover, the scaffold was exposed to public view while suspended on the building, and was also readily observable by the tenants in the building. Therefore, Western could have had no reasonable expectation of privacy concerning the viewing of the scaffolding and, consequently, there was no Fourth Amendment violation. *See Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The Commission majority held that the Fourth Amendment is co-extensive with section 8(a). However, due to our findings that there was no Fourth Amendment violation and that violation of section 8(a), if there was any, did not prejudice Western's ability to defend on the merits, we do not address the issue of whether the Fourth Amendment is in all circumstances co-extensive with section 8(a). In short, we hold that where there has been neither a Fourth Amendment violation nor prejudice to the complaining employer as a result of a failure of the compliance officers to present credentials to the employer, suppression of evidence is unjustified under section 8(a). *See Accu-Namics, Inc. v. Occupational Safety and Health Review Comm'n*, 515 F.2d 828, 833 (5th Cir. 1975), cert. denied, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976).

Western's primary contention is that the decision of the Commission to suppress the evidence obtained from the inspection should be upheld on the ground that the inspection was not conducted in accordance with the "walkaround" provisions specified in section 8(e) of the Act, in that representatives of Western were not given an opportunity to accompany the compliance officers in their inspection.[4]

After conducting the inspection the compliance officers returned to their own office, intending to contact Western and inform it of the initial inspection. However, approximately ten minutes after the compliance officers returned to their office, representatives of Western arrived to report the fatality. Although there was a conflict in the testimony, the administrative law judge made the finding which was adopted by the Commission and is supported by the record that the compliance officers discussed a number of apparent violations with Western's representatives, and asked them if they had any questions and if they wished to accompany the compliance officers back to take a look.

■ In *Accu-Namics, Inc. v. Occupational Safety and Health Review Comm'n, supra*, the Fifth Circuit affirmed a ruling of a majority of the Commission that a showing of prejudice must be made before a citation will be vacated because of a failure by the Secretary's representatives to comply with section 8(e). *See also Ringland-Johnson, Inc. v. Dunlop*, 551 F.2d 1117, 1118 (8th Cir. 1977); *Brennan v. Occupational Safety and Health Review Comm'n*, 487 F.2d 230, 236 (5th Cir. 1973). We choose to follow the rule established in *Accu-Namics, Inc.*, and therefore reverse the majority of the Commission which held that a violation of section 8(e) may lead to suppression of evidence even in the absence of a showing of prejudice to the employer.

■ Western claims it was prejudiced by the failure of the compliance officers to follow the procedures specified in section 8(e). As evidence of prejudice which resulted from not having a representative present during the inspection, Western points to the number of citations which were withdrawn by the Secretary when the complaint was filed and the fact that according to the Commission's lead opinion only one or two

---

4. Western also relies on certain regulations promulgated by the Secretary to aid in implementing the Act, 29 C.F.R. §§ 1903.1 et seq., and parts of the Secretary's Field Operation Manual, *Compliance Operations Manual*, Ch. 5,

¶ F,1. These passages are essentially restatements of the Act. We do not find that they afford Western any greater rights than the Act itself.

minor violations were proved in the hearing on the merits. Western also claims it was prejudiced because it had to post all of the citations at its workplace. While these allegations of prejudice do illustrate the inconvenience to an employer which can be caused by a failure to offer a "walkaround" they do not constitute a showing of prejudice to Western in its ability to present its defense on the merits before the Commission. Therefore, suppression of the evidence is unwarranted in the present case. *Accu-Namics, Inc. v. Occupational Safety and Health Review Comm'n, supra.* Cf. *Long Mfg. Co. v. Occupational Safety and Health Review Comm'n,* 554 F.2d 903, 907–08 (8th Cir. 1977).

In *Chicago Bridge and Iron Co. v. Occupational Safety and Health Review Comm'n,* 535 F.2d 371 (7th Cir. 1976), the Seventh Circuit held that suppression of evidence was not appropriate in that case because the Secretary's representative had substantially complied with the requirements of section 8(e) and the employer was unable to demonstrate prejudice. *See also Hoffman Construction Co. v. Occupational Safety and Health Review Comm'n,* 546 F.2d 281 (9th Cir. 1976); *Hartwell Excavating Co. v. Dunlop,* 537 F.2d 1071 (9th Cir. 1976). The court did not reach the questions of whether substantial compliance or lack of prejudice standing alone would be sufficient to prevent suppression of evidence obtained in an inspection. In the present case the Commission majority found that the compliance officers did not substantially comply with section 8(e) because neither officer made any personal effort to contact Western before making the inspection although they knew the scaffold belonged to Western. The Commission also noted that there were no employees at the site who were being exposed to danger and that the officers knew the scaffold was not to be removed until the end of the working day. On appeal, the Secretary asserts that there was substantial compliance because the compliance officers reasonably believed that an attempt to contact Western had been made and was unsuccessful and because an offer to conduct an inspec-tion with full accompaniment was extended to Western before there had been any change in the conditions which were the subject of the citations.

■■ We need not resolve the issue of whether there was substantial compliance with section 8(e) because we conclude that any violation did not result in prejudice to Western in its defense on the merits. Such a finding is sufficient to preclude suppression of evidence obtained in the contested inspection. Section 8(e) is not merely directory and every practical effort to afford accompaniment· opportunities to both employers and employees should be made. *See Chicago Bridge and Iron Co. v. Occupational Safety and Health Review Comm'n, supra.* However, a remedy for violation of this provision should not be allowed which needlessly inhibits fulfillment of the predominant statutory purposes of providing employees with safe and healthful working conditions. Compliance with section 8(e) is not jurisdictional and the sanction of suppression of all evidence from an inspection should not be imposed for failure to offer a "walkaround" when the complaining employer has not suffered any prejudice to its defense. *See Accu-Namics, Inc. v. Occupational Safety and Health Review Comm'n, supra,* 515 F.2d at 833–34.

■ Since the Commission holding did not require a decision on the merits and the Commissioners were sharply divided on the violations, we would ordinarily reverse and remand without more. However, with respect to the serious violation charged the Commission majority indicated that if it were deciding the merits it would hold "that the front of the scaffold facing the building was not an open side requiring guardrail protection." This finding is not supported by the record. We agree with Commissioner Cleary that "Because the columns of the building projected outward 14 to 18 inches, there was a space of this dimension between the scaffold and the windows [sufficient room to allow a man to fall]. To this extent, the front was clearly open and should have been guarded." *See* 29 C.F.R. § 1926.451(i)(11).

Reversed and remanded for consideration of the merits of the controversy in accord herewith.