**OCEAN ELECTRIC CORPORATION,
Petitioner,**

v.

**SECRETARY OF LABOR and Occupational Safety and Health Review Commission, Respondents.**

**No. 76–1060.**

United States Court of Appeals,
Fourth Circuit.

Argued May 1, 1978.

Decided March 16, 1979.

Charles R. Waters, II, Norfolk, Va., Henry H. Mansbach, Thomas E. Cabaniss, Norfolk, Va., Conrad M. Shumadine, Richmond, Va., David Y. Faggert, Kaufman & Oberndorfer, Norfolk, Va., on brief, for petitioner.

Dennis K. Kade, Atty., Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for App. Litigation, U. S. Dept. of Labor, Washington, D. C., on brief), for respondents.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

This case comes to us on a grant of petition for rehearing. The Occupational Safety and Health Review Commission found that Ocean Electric Corporation had committed a serious violation of OSHA Regulation 29 C.F.R. § 1926.957(a)(3) by failing to provide a barricade or barrier between its employees and energized electrical bus bars. We previously filed an opinion affirming the Commission, but a petition for rehearing was granted, and the case was reargued before a reconstituted panel.[1] We now withdraw the first opinion and reverse the Commission.

Ocean Electric is a Virginia corporation engaged in business as an electrical contractor. Pursuant to contract, it was installing an additional switch gear unit at a Navy electric power station in Virginia Beach, Virginia. The job was to be done in two parts. The first part required setting the new unit in place adjacent to an existing unit. The second part would have involved energizing the new unit by tying it to its adjacent unit, which required de-energizing the adjacent unit.

On the day the first part of the job was to be performed, J. W. Kistler, the job superintendent, inspected the jobsite, drew up a work plan, and assigned three men to the project, Jack Watson, Marcel Burger, and the decedent, Jerry Kephart. Watson, the foreman, was an experienced journeyman electrician who had a perfect safety record prior to this accident. Burger also was an experienced electrician who had first aid training. Kephart was an apprentice electrician of outstanding ability with three years' experience, at least twelve months of which were with Ocean.

When the men began work, Watson noticed that a ground bus bar extended some six inches out from the base of the existing switch gear unit. To facilitate placement of the new unit, Watson decided to remove this unenergized ground bus bar. In order to determine how to accomplish this task, Watson opened the door on the existing switch gear unit. The ground bus bar ultimately was removed, but the last time Watson opened the door he neglected to close it.

The new unit was lowered into place by crane. The cables attaching the unit to the crane became slack when the unit touched

---

1. Judge Craven was a member of the first panel but died during the pendency of the case. He was replaced by Judge Widener.

the ground, and Watson ordered his assistants to grab them. Kephart grabbed the cables with his right hand, and at the same time stuck his left hand through the open door of the existing unit and touched an energized bus bar. He was electrocuted.

The case was tried on a stipulated statement of facts, and, in addition to the basic facts related above, the parties made the following stipulations among others: The decision to remove the unenergized ground bus bar was made at the last minute and was not contemplated by the superintendent; Watson's act in leaving the door open was accidental, not intentional, and purely a human error; the accident was caused solely by human error; and all three employees were all acquainted with the dangers involved in handling energized bus bars.

An OSHA compliance officer visited the jobsite and cited Ocean for failure "to provide a barricade, a barrier, or insulating equipment that would prevent accidental contact by employees with conductors energized by high voltage electricity." This failure, it was alleged, violated OSHA Regulation 29 C.F.R. § 1926.957(a)(3) which in turn is a breach of the employer's duty under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)(2).[2] Since an employee was killed, Ocean was cited for a serious violation of the Act. 29 U.S.C. § 666(j). A penalty of $700 was assessed. The original penalty was $1000, but this amount was reduced by ten percent for good faith and twenty percent because Ocean had no past history of violations under the Act.

Ocean contested the violation, and the Secretary of Labor filed a complaint to have the citation affirmed. 29 U.S.C. § 659(c). Ocean argued that the accident was unforeseeable and unpreventable, and that it should not be held responsible for the human error of its foreman. The administrative law judge rejected this argument, applied the common law doctrine of respondeat superior, and held Ocean responsible for the negligent act of its foreman. 1974–75 CCH OSHD § 18,422. The Occupational Safety and Health Review Commission (OSHRC) affirmed the holding of the hearing examiner, but for a different reason. It recognized Congress did not intend to hold employers to absolute responsibility for acts of their supervisors in each instance, although such may be the general rule, and where a company "has done everything reasonably possible to assure compliance, but a supervisor nevertheless creates a violation which was unforeseeable and therefore unpreventable," no liability should attach. 1974–75 CCH OSHD § 20,-167, at 23,993. The Commission obviously viewed this exception, however, as an affirmative defense and held Ocean responsible for Watson's acts because it had not carried its burden of proof by showing the adequacy of its safety program.

The basic issue in this case is the extent of a company's responsibility for its foreman's actions under OSHA. Resolution of this issue requires a consideration of a variety of contexts in which the issue can arise. In this case alone, the issue is raised in three different settings. First, Ocean argues that it, in fact, complied with the regulation by providing a proper barrier between the bus bar and its employees. The Secretary disagrees and argues that a violation occurred when Ocean's foreman left the door open which the Secretary says removed the barrier. The issue is Ocean's responsibility for the foreman's act. If the responsibility for Watson's negligent act is imputed to Ocean, it violated the regulation. If not, Ocean complied.

Second, Ocean argues that it lacked the knowledge required for a serious violation of the Act. 29 U.S.C. § 666(j) states that an employer will not be guilty of a serious

---

**2.** Section 654(a)(2) states that each employer "shall comply with occupational safety and health standards promulgated under this chapter."

OSHA Regulation 29 C.F.R. § 1926.957(a)(3) provides that "extraordinary caution shall be used in the handling of bus bars, tower steel, materials, and equipment in the vicinity of energized facilities. The requirements set forth in § 1926.950(c) shall be complied with."

29 C.F.R. § 1926.950(c) is a statement of required clearances.

violation if it "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." If Ocean is not responsible in law for the act of its foreman, if it did what it normally could to prevent it, then it is difficult to say that Ocean had actual or constructive knowledge of the violation. On the other hand, if Watson is the personification of Ocean, then his knowledge will be imputed to Ocean and the requirements of § 666(j) will be satisfied.

Finally, Ocean argues that nothing it could have done would have prevented this accident or would prevent future similar accidents; and that to hold it liable for unpreventable accidents would undermine the purpose of the Act. The administrative law judge rejected this formulation of the issue and held Ocean liable on a strict application of respondeat superior. The Commission, as noted, agreed with Ocean's formulation of the issue, but held that Ocean had not met its burden of proof by introducing evidence showing the sufficiency of its safety program. The issue here, once again, is the type of steps Ocean must take in order to separate itself from the negligent acts of its supervisory employees.

 Ocean may not escape all responsibility for the acts of its supervisors. A corporation can only act through its agents and to excuse Ocean simply because its foreman was negligent would emasculate the Act. However, an imputation of a supervisor's acts to the company in each instance would frustrate the goals behind the Act. As the Commission correctly stated: "Such a holding would also not tend to promote the achievement of safer workplaces. If employers are told that they are liable for violations regardless of the degree of their efforts to comply, it can only tend to discourage such efforts." 1974–75 CCH OSHD § 20,167, at 22,993. Further, it does not appear that Congress intended the employer to be an insurer of employee safety. "The Congress declares it to be its purpose and policy . . . to assure *so far as possible* every working man and woman in the Nation safe and healthful working con-

ditions and to preserve our human resources . . . ." 29 U.S.C. § 651(b) (emphasis supplied). And, as stated in the Act's legislative history: "An employer's duty under . . . [the general duty clause] . . . is not absolute." H.R.Rep.No.92–1291, at 21, cited in *National Realty and Construction Co. v. OSHRC*, 160 U.S.App.D.C. 133, 142, 489 F.2d 1257, 1266 (1973).

We are of opinion that Ocean must accept some, but not unqualified, responsibility for the acts of its foreman. Both the Commission and the Courts of Appeals now accept this basic proposition, but there is not complete agreement as to where to draw the line on an employer's responsibility. In several cases, the Commission gave a fairly broad reading to the unforeseeable/isolated incident limitation on liability. In *Secretary v. Otis Elevator Co.*, 17 OSAHRC Rep. 926 (1975), a company was cited when its employee failed to wear a proper safety belt. The Commission vacated the citation when it was shown that the employee's act was an isolated incident done on the spur of the moment in violation of company safety policies. The Commission applied the same rationale to supervisory employees in *Secretary v. Bechtel Power Corp.*, 9 OSAHRC Rep. 762 (1974), where a foreman was killed as a result of his own negligence.

In *Secretary v. R. Zoppo Co., Inc.*, 20 OSAHRC Rep. 389 (1975), a company driver was electrocuted when he drove into overhanging power lines. OSHA cited the company for operating its equipment without providing proper clearance for the truck. Based on the driver's excellent past safety record, the company's safety program and direct warnings given to the employee, the Commission vacated the citation. A company's safety instructions can be hollow words, however, and the Secretary has taken the position that in certain circumstances even direct warnings may not make an accident unforeseeable. The Secretary raised this argument in *Secretary v. Butterowe, Inc.*, 6 OSAHRC Rep. 543 (1974). In *Butterowe*, an employer specifically instructed two employees not to use a hoist to lift roofing cement to the roof of a building

because of the proximity of electric wires but to carry the cement up to the roof themselves. The two employees used the hoist anyway, and one of them was electrocuted. The Secretary argued that carrying the cement to the roof was so much more difficult and time consuming than using the hoist that employee disobedience was foreseeable. The Commission disagreed and held that the Secretary had failed to show either a violation of the general duty clause or the requisite knowledge for a serious violation. *Butterowe*, at 550–51. The same result was reached in *Secretary v. Shea-Ball*, 10 OSAHRC Rep. 719 (1974). Finally, in *Secretary v. Engineers Construction, Inc.*, 20 OSAHRC Rep. 348 (1975), a company was charged with a specific violation of the Act because one of its supervisory employees was seen working in a trench without a trenchbox or sheeting as was required by company safety rules. The Commission vacated the citation because the Secretary had not shown what Engineers could have done to prevent the isolated incident of idiosyncratic behavior of the supervisor.

In two recent cases, however, the Commission has attempted to restrict the line of cases discussed above. In *Secretary v. Floyd S. Pike Electrical Contractor, Inc.*, 15 OSAHRC Rep. 302 (1975), a foreman was electrocuted when he failed to properly ground a hoist truck. In affirming a finding of a serious violation of the specific duty clause, the Commission reversed the administrative law judge who had held the accident unforeseeable, and imputed both the act and the knowledge of the foreman to the company. Floyd Pike appealed the Commission's decision, and we remanded the case for reconsideration in light of the apparently conflicting holding in *Engineers* we have referred to above. 557 F.2d 1045 (4th Cir. 1977). Before the Commission decided *Floyd Pike* on remand, it decided the case at bar. The concepts of foreseeability and preventability were recognized but not held binding or even persuasive because of a new rule it adopted which makes the quality of a safety program an essential item in each case of idiosyncratic behavior of a supervisor and which transforms the safety program issue into an affirmative defense with the burden on the employer. No specific effort was made to distinguish *Engineers*. On remand in *Floyd Pike* the Commission found that its earlier decision was inconsistent with *Engineers*, and, following the affirmative defense language of its own decision in *Ocean Electric*, held the employer not responsible for an unpreventable accident. *Floyd Pike*, 1978 CCH OSHD § 22,805. Thus, at the present time it is clear that the Commission has abandoned the respondeat superior argument and has recognized limits on an employer's liability, but has placed the burden on the employer to prove the accident was unpreventable.

The Courts of Appeals also have recognized there are limits on an employer's responsibility for the acts of its supervisors. In *National Realty*, supra, the District of Columbia Circuit refused to find a serious violation of the general duty clause because the Secretary of Labor had not proven what the company could have done to foresee or prevent one of its employees from riding on the running board of an earth loader. In *Brennan v. OSHRC*, 502 F.2d 946 (3d Cir. 1974), the Third Circuit applied the *National Realty* test in a case concerning a serious violation of the general duty clause. It found that there was an unresolved question as to whether the company had done all it could to prevent the accident in that it had allowed the employee to work alone in a situation where two employees might have provided more safety. The court remanded the case to the Commission to resolve the question and to decide whether the Secretary had met his burden. In *REA Express v. Brennan*, 495 F.2d 822 (2d Cir. 1974), the Second Circuit also applied the *National Realty* test and found a serious violation of the general duty clause where the company's,

> supervisory personnel permitted untrained employees to attempt repairs in this basement room on a wet concrete floor, the day after a three-inch rainfall, without boots, insulated shoes, rubber gloves or rubber mats. These employees

were not electricians . . . . There was no evidence that they had ever been instructed or qualified to handle or repair equipment which had such a potential for mortal injury. This was not a case of idiosyncratic or unexpected employee behavior. The plant had lost electric power and the repairs were attempted with the full knowledge of REA supervisory personnel in a setting which presented maximum peril and was devoid of rudimentary safety equipment. 495 F.2d at 826. In *Brennan v. OSHRC*, 501 F.2d 1196 (7th Cir. 1974), the Seventh Circuit affirmed the Commission's finding of no serious violation of the general duty clause because the accident was unforeseeable. The employee in that case had not been trained, but he was given specific instructions not to participate in the operations. His presence on the jobsite, in itself, was not enough to make it foreseeable that he would join in the work and be injured. Finally, in *Floyd S. Pike Electrical Contractor, Inc. v. OSHRC*, 576 F.2d 72 (5th Cir. 1978), the Fifth Circuit upheld the Commission's finding of liability where an inexperienced foreman in charge of an inexperienced crew worked in an improperly shored trench in violating a specific regulation, and the company had taken no action to enforce a company rule against such conduct despite knowledge of violations by some employees.

■ The cases discussed above clearly indicate that if a violation by an employee is reasonably foreseeable, the company may be held responsible. But, if the employee's act is an isolated incident of unforeseeable or idiosyncratic behavior, then common sense and the purposes behind the Act require that a citation be set aside.

Although the courts and the Commission now agree that employer liability for unforeseeable accidents should be limited, the Commission in this case now seeks to depart from its former rulings as to who should bear the burden of proof on this issue. In *Secretary v. Shea-Ball*, 10 OSAHRC Rep. 719 (1974), the employer was charged with a serious violation of specific OSHA Regulations because its employee was not wearing

protective goggles. The company furnished goggles but the record did not show that the company required them to be worn. The Commission vacated the citation and stated:

Complainant [Secretary of Labor] has the burden of proof and he must discharge that responsibility in every case, even one that reaches the decisional stage, as does this one, without a formal hearing where testimony and other evidence is normally adduced. . . . No part of the Secretary's burden can be left to speculation or conjecture. An isolated violation of a standard by an employee which is unknown to the employer and contrary to the employer's orders does not necessarily constitute a violation of 29 U.S.C. 654(a)(2).

In the case before us, however, the Commission placed the burden on the company to show unforeseeability and unpreventability, and affirmed the citation because no evidence was presented on the adequacy of Ocean's safety instruction program.

In our judgment, an employer who would otherwise be found in violation due to the actions and knowledge of a supervisor should be permitted to defend on the basis that it took all necessary precautions to prevent the occurrence of the violation. . . . We will require a showing by the employer that the supervisory employee with knowledge of the violation was himself adequately supervised with regard to safety matters. 1974–75 CCH OSHD § 20,167, at 23,993–94.

The Commission made it clear that it referred to the adequacy of the safety program.

■ We believe that the Commission erred, and that the burden of proof should be on the Secretary. This is more especially true in this case where the issue of the adequacy of a safety program was not before the administrative law judge. 29 CFR Part 2200 provides rules of procedure for all proceedings before the OSHRC. 29 C.F.R. § 2200.2(a). Section 2200.73(a) states that "[i]n *all proceedings* commenced by the fil-

ing of a notice of contest, the burden of proof shall rest with the Secretary." (Italics added). In *Brennan v. OSHRC*, 511 F.2d 1139 (9th Cir. 1975), the Ninth Circuit placed the burden of proof on the Secretary to show the knowledge required for a serious violation of a specific regulation, the same situation presented to us here. And, in *National Realty* the District of Columbia Circuit placed the burden on the Secretary to show what particular measures a company could have taken to improve its safety program. Any deficiencies in the record on this point were charged to the Secretary. 160 U.S.App.D.C. at 143, 489 F.2d at 1267.

The Secretary would distinguish *National Realty* as a general duty case. He argues that the broad scope of the general duty clause justifies placing the burden of proof on the government. He particularly relies on the following language from *National Realty*:

> Because employers have a general duty to do virtually everything possible to prevent and repress hazardous conduct by employees, violations exist almost everywhere, and the Secretary has an awesomely broad discretion in selecting defendants and in proposing penalties. To assure that citations issue only upon careful deliberation, the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures. 160 U.S.App.D.C. at 144, 489 F.2d at 1268.

We do not believe the Secretary's argument should prevail. We begin by recalling that the stated issue in this case was failure "to provide a barricade, a barrier." The issue was made in the citation and repeated in the complaint which adopted the citation by reference. The complaint did not elaborate as it might have. See *REA Express*,

495 F.2d at 826. Following the company's answer, which denied the violation, the parties entered into the stipulation we have before referred to. The answer did allege that Ocean had taken all reasonable precautions in planning the work, had trained its employees to avoid unsafe practices, and had taken all practical steps to insure the safety of its employees. However, the matter was never mentioned again in the trial before the administrative law judge.[3] The issue of the adequacy of a safety program was first brought into the case in the Commission's opinion when it found against the employer for failure to bear the burden of proof. That the program was never at issue before is illustrated by the statement of the government's attorney before the administrative law judge:

> "The vast bulk of OSHA case law [i]mputes the knowledge and actions of the foreman to the Respondent.
>
> \* \* \* \* \* \*
>
> "Respondent's counsel has cited cases holding that a violation of a standard is not established where an employee failed to follow safety procedures directed and enforced by the employer.
>
> "That is not the situation here. It was the ultimate responsibility of the foreman to require sufficient protective equipment to prevent accidental contact of the body with energized conductors or parts.
>
> *"It was the foreman representing management who was not adhering to respondent's own safety rules."* (Italics added).

Thus, not only was the safety program not mentioned at the trial, it was fairly understood at the trial by both parties, as well as the judge, that the question being tried was whether Ocean was responsible for Watson's act, which it was understood was in violation of Ocean's own safety rules and was stipulated to be "accidental, not intentional, and purely a human error." The

---

**3.** At the first hearing of this case before us we received the impression, in response to an inquiry to counsel, that the employment of the outside safety firm was all the proof concerning its safety program Ocean could offer. On reargument, however, we were advised by counsel that our first impression was a mis-

take, that Ocean could present the details of its safety program, and that the attorney who first argued the case was under the impression that he should reply to our question only from matters already in the record. Our decision, however, has not been determined by the matters related in this footnote.

administrative law judge found Watson's act to be "contrary to established procedures" but held Ocean liable on the theory of respondeat superior without mentioning a safety program or its adequacy.

On review, the Commission disagreed with the administrative judge as to liability of Ocean on the theory of respondeat superior, but held against Ocean because it had not carried its burden of proof as to whether or not its safety program was adequate.

The Commission itself has ruled in a quite similar case, *Shea-Ball*, supra, at p. 723, that "[f]urnishing personal protection equipment and requiring the same to be worn are quite different, and the respondent was not charged with the latter." In our case, furnishing a barrier or barricade and closing the door to the barricade are quite different, and Ocean was not charged with the latter. Passing, however, the defect in the charge, if Ocean's safety program had been put in issue when it became obvious to all that the matter which was actually to be tried was the act of Watson in failing to close the door to the barricade, we might have a different case. But the program was not put in issue although Ocean had mentioned the same in its answer. Rather, the stipulation was entered into and the case was tried on the theory of respondeat superior. To repeat: "It was the foreman representing management who was not adhering to respondent's own safety rules."

This very subject was considered in *National Realty*, 160 U.S.App.D.C. at 139–143, 489 F.2d at pp. 1263–1267, following the rule that administrative pleadings are liberally construed and easily amended. Thus, although the barricade was extant, and the charge might be said to have been facially refuted by the stipulation, the Secretary, to only slightly paraphrase *National Realty*, despite the awkwardness of his charges and pleadings, could properly have produced evidence at the hearing on the question of whether Ocean's safety policy failed to meet the required standards. This the Sec-

retary did not do, and we do not fault him for it, for no one had contemplated the safety policy as an issue to be tried.

When the Commission later found against Ocean because of Ocean's failure to bear its burden of proof, we think it erred as a matter of law in two respects. First, as we have demonstrated, we think the burden of proof is on the Secretary.[4] Second, we do not think that Ocean was fairly apprised that the adequacy of its safety policy was an issue in the proceeding on review.

In some instances we might remand the case for further consideration as to the adequacy of the safety program, *cf. Brennan v. OSHRC*, 502 F.2d at 953, but here the Secretary alleges a serious violation of a specific regulation. Ocean may not be found guilty of a serious violation if it did not, and could not with the exercise of reasonable diligence, know of the presence of the violation. 29 U.S.C. § 666(j). It has been stipulated that Watson's action in leaving the door to the barricade open was "accidental, not intentional, and purely a human error;" that Ocean "did not anticipate the actual course of events." Nothing is suggested to show Ocean could have foreseen the accident. Watson was an experienced journeyman electrician with a perfect safety record, and Kephart, while of considerably less experience, was a man of extraordinary ability, who it is stipulated, when he stuck his hand in the open door, "violated the principles of his training." In these circumstances, when the case was tried on one theory, and decided on another on review, the Secretary having had the opportunity to introduce the matter of the adequacy of the safety program at the hearing, and having not done so, it cannot be said that anything in the record indicates that it was in any way foreseeable that Watson would leave the door to the barricade open. Accordingly, it is the Secretary who has not borne the burden of proof, not Ocean.

The judgment of the Commission is accordingly

*REVERSED.*

---

4. There is no reason, of course, that, when a question concerning the adequacy of a training program is under consideration by the Secre-

tary, he may not require the employer to produce all relevant information as in any other civil case.