38

CENTRAL SOYA DE PUERTO RICO,
INC., Petitioner,

v.

SECRETARY OF LABOR, (Occupational
Safety and Health Administration)
Respondent.

No. 80–1655.

United States Court of Appeals,
First Circuit.

Argued April 6, 1981.

Decided July 7, 1981.

Salvador Antonetti-Zequeira, Santurce, P. R., with whom Goldman, Antonetti & Davila, Santurce, P. R., was on brief, for petitioner.

Ann D. Nachbar, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Alfred G. Albert, Acting Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety & Health, Allen H. Feldman, Counsel for Appellate Litigation, and John A. Bryson, Asst. Counsel for Appellate Litigation, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

The single issue presented by this petition for review is whether there is substantial evidence on the record as a whole to support the decision of the Occupational Safety and Health Review Commission that the petitioner, Central Soya de Puerto Rico, Inc., wilfully violated the requirements of the Occupational Health and Safety Act. 29 U.S.C. § 666(a).[1] Finding there to be substantial evidence of wilfulness, we affirm.

The petitioner operates an animal feed manufacturing plant next to San Juan Bay, Guaynabo, Puerto Rico, with an adjoining steel tower used to unload bulk grain from ships and barges. On July 27, 1979, a heavily corroded portion of the second floor of the tower gave way causing Amilcar Ortiz, a Central Soya employee, to fall over fourteen feet. Ortiz was not seriously injured. A compliance officer of the Occupational Health and Safety Administration, responding to a complaint filed by Ortiz, inspected the tower and found widespread corrosion

1. "§ 666. PENALTIES
    (a) Any employer who willfully or repeatedly violates the requirements of section 5 of this Act [29 USCS § 654], any standard, rule, or order promulgated pursuant to section 6 of this Act [29 USCS § 655], or regulations prescribed pursuant to this Act may be assessed a civil penalty of not more than $10,000 for each violation."

of the steel plate flooring. For this petitioner was cited for a wilful violation of the Act's general duty clause, 29 U.S.C. § 654(a),[2] with a proposed penalty of $9,000. After a hearing, an Administrative Law Judge (ALJ) upheld the charge of wilful violation but reduced the proposed penalty to $2,500 because of the employer's prompt abatement of the hazard. The Commission adopted the Administrative Law Judge's decision and order.

Central Soya does not dispute that corroded flooring constitutes a generally recognized hazard within the meaning of the general duty clause, but restricts itself to the issue of wilfulness: whether, in petitioner's formulation, it had knowledge, before Ortiz's accident, of the corroded condition of the tower floor. "Knowledge" by a corporate entity is necessarily a fiction; the corporation can only be said to "know" information by imputing to it the knowledge of natural persons who serve as its agents. In this case, the ALJ found that prior to the July 27 accident, "through its supervisory employees, [petitioner] had actual knowledge that said steel plates were corroded and required braces."

At the time of the accident, petitioner's maintenance department consisted of ten employees, divided into two groups. One group was responsible for maintenance and repair of the tower and was supervised by Miguel Barasorda. The second group was responsible for similar duties in the plant and was supervised by Oliver Hoover. Hoover and Barasorda reported to Ricardo Santaella, the plant engineer, who headed the maintenance department. Ortiz, who worked in Barasorda's group, testified that six weeks before his accident, he had informed Barasorda and Santaella both that "they should look at the floor, that it was corroded and that men could fall and get killed." Supervisor Barasorda confirmed Ortiz's report to him and testified that he too had notified the plant engineer Santaella that the floor was in a dangerous condition and required bracing. (At the time of the accident, the steel plates were not braced but were welded edge-to-edge, holding only against the outside of the tower.) According to Barasorda, Santaella replied, "yes, I know" but did nothing. Another employee, Angel Bauso, testified that he had noticed corrosion when he removed a plate from the second floor of the tower approximately a week and a half before Ortiz's accident. Bauso informed supervisor Hoover, whom he described as "the supervisor at that time." Hoover was not called as a witness.

Plant engineer Santaella, testifying as a witness for the petitioner, denied any foreknowledge of the dangerous condition of the flooring and specifically denied that he had been notified of the danger by Ortiz and Barasorda. Petitioner's principal argument is that the ALJ erred in crediting Ortiz and Barasorda over Santaella on the issue of his knowledge. A threshold problem with this argument is the assumption that notice to Santaella was a necessary predicate for a finding of corporate knowledge. There was undisputed evidence that Hoover and Barasorda, both "supervisory employees", knew of the corrosion before Ortiz's fall; and the ALJ's crucial finding, imputing knowledge to the corporation through "supervisory employees", obviously was not restricted to Santaella alone.

We have upheld a finding of wilful violation based upon the knowledge and inaction of a construction foreman. *F. X. Messina Construction Corp. v. OSHRC*, 505 F.2d 701 (1st Cir. 1974) (per curiam). We think it is reasonable on the facts of this case to charge the employer with knowledge of the hazard based on the knowledge of supervisory personnel of an unsafe condition existing within the scope of their supervisory responsibility. This is not to hold that an employer is necessarily to be held responsi-

2. "§ 654. DUTIES OF EMPLOYER AND EMPLOYEE
(a) Each employer—
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; . . . ."

ble for actions of its supervisors taken contrary to the employer's instructions or safety regulations, or which are otherwise unforeseeable. *Cf. Ocean Electric Corp. v. Secretary of Labor*, 594 F.2d 396 (4th Cir. 1979) (interpreting knowledge proviso applicable to "serious" violations); *Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564 (5th Cir. 1976) (same). Here, however, it was at the very least established that two supervisors directly charged by the employer with maintenance of the plant's facilities, one of whom had direct responsibility for employees exposed to the hazard, knew of the highly dangerous condition of the tower. Under these circumstances, the knowledge of these supervisory employees is properly imputed to the employer to establish a violation.

Given knowledge of the condition of the tower flooring, the conclusion easily follows that petitioner's failure to take corrective action was in conscious disregard of the requirements of the Act and therefore wilful.[3] Despite repeated warnings of a serious fall hazard, petitioner ordered its employees to work on the second floor of the tower. Far from an unexpected occurrence, corrosion was commonplace under the marine environmental conditions prevailing at the tower and yet petitioner failed to monitor for the presence of corroded metal.[4] By the time of Ortiz's fall the corrosion of the second floor was heavy and widespread. We think this evidence sufficient to demonstrate the degree of indifference to the requirements of the law necessary to establish a wilful violation of a statutory obligation. *F. X. Messina Construction Corp.*, 505 F.2d at 702.

Petitioner argues that it is entitled to a de novo review of the ALJ's credibility determinations because the decision in this case was rendered on the written record by consent of the parties when the ALJ who heard the evidence retired before making his decision.[5] Because we conclude that there is substantial evidence to support the order without regard to Santaella's testimony, we need not pass upon the petitioner's contention that the second ALJ's disbelief of Santaella's protestations of ignorance should not be given customary deference. As to the testimony supporting the ALJ's decision and order, we are satisfied that it is not inherently incredible.

Nor do we find persuasive the contention that petitioner should be relieved of liability for a wilful infraction because a safety study it commissioned in March, 1979, failed to detect any corrosion of the tower flooring. The safety consultant testified that he had not looked for corrosion and had never been asked to do so, although he acknowledged that environmental conditions at the tower were conducive to rapid corrosion. Moreover, the employer obviously cannot hope to escape the consequences of actual knowledge by reliance of a safety study conducted several months *before* it received reports of an existing hazard.

*Affirmed; order enforced.*

---

3. Petitioner points out that some of Barasorda's testimony can be read to say that he, acting on his own, laid protective wooden planking across the tower floor *before* Ortiz's accident. Passing the question whether such precautions can be considered adequate, his testimony read as a whole supports the view that planking was not used until after the accident.

4. There was further evidence of wilfulness, not addressed by the ALJ, that Central Soya was cited in 1976 for corrosion of fixed ladders on the marine tower. The citation, which was not contested, also stated that the ladders were not inspected regularly.

5. We note our disapproval of this practice except in cases of unavoidable and unexpected disability.