Filed: June 24, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1492

L. R. Willson and Sons, Incorporated,

Petitioner,

versus

Occupational Safety & Health Review Commis-
sion; Secretary of Labor,

Respondents.

O R D E R

The court amends its opinion filed January 28, 1998, as follows:

On the cover sheet, section 2 -- the caption is amended to add "Secretary of Labor" as a respondent.

On page 2, lines 1 and 7 -- the word "Respondent" in the counsel listing is changed to read "Respondents."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

L. R. WILLSON AND SONS,
INCORPORATED,
Petitioner,

v.                                                    No. 97-1492

OCCUPATIONAL SAFETY & HEALTH
REVIEW COMMISSION; SECRETARY
OF LABOR,
Respondents.

On Petition for Review of an Order
of the Occupational Safety and Health Review Commission.
(94-1546)

Argued: October 31, 1997

Decided: January 28, 1998

Before RUSSELL and LUTTIG, Circuit Judges, and CAMPBELL,
Senior Circuit Judge of the United States Court of Appeals for the
First Circuit, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Russell wrote the opinion, in which Judge Luttig joined.
Judge Campbell wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Frank Leo Kollman, KOLLMAN & SHEEHAN, P.A.,
Baltimore, Maryland, for Petitioner. Charles Franklin James, Office
of the Solicitor-OSH, UNITED STATES DEPARTMENT OF

LABOR, Washington, D.C., for Respondents **ON BRIEF:** Randi Klein Hyatt, KOLLMAN & SHEEHAN, P.A., Baltimore, Maryland, for Petitioner. J. Davitt McAteer, Acting Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation, Office of the Solicitor-OSH, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents

---

**OPINION**

RUSSELL, Circuit Judge:

L.R. Willson and Sons, Inc. ("Willson") appeals the Occupational Safety and Health Review Commission's affirmance of a citation by the Secretary of Labor (the "Secretary") for violation of the Occupational Safety and Health Act of 1970 ("the Act").[1] The Secretary issued the citation as a result of an inspection of one of Willson's construction worksites in Orlando, Florida that revealed that Willson employees were working on structural steel more than 80 feet above ground without using the "fall protective devices" mandated by 29 C.F.R. § 1926.750(b)(1)(ii).[2] An Administrative Law Judge ("ALJ") of the Occupational Safety and Health Administration ("OSHA") held an evidentiary hearing on the matter, concluded that Willson had indeed violated the regulation, and assessed a fine of $7,000. The Safety and Health Review Commission (the "Commission") affirmed the ALJ's findings, and this appeal followed.

Because we find that the Commission erred in placing the burden of showing the unforeseeability or preventability of the violation in question on Willson, we reverse.

---

[1] 29 U.S.C. §§ 651-678 (1994).

[2] This regulation states in part that: "On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet."

2

I.

The inspection that resulted in the Secretary's citation took place on April 29, 1994, and was precipitated by the observations of Joseph Dear, Assistant Secretary of Labor for Occupational Safety and Health. Dear, whose room at the Peabody Hotel was across the street from Willson's worksite in Orlando, observed from his window employees on the site working without fall protection. Dear telephoned Ronald Anderson, a local OSHA "compliance officer," and told him of what he had seen, and Anderson came to make an inspection of the site. However, rather than going immediately to the Willson site, Anderson obtained permission from the Peabody Hotel to videotape the activities on the site from the hotel's roof. For approximately 50 minutes, Anderson videotaped the activities at the site, which included two employees working at a height of about 80 feet without adequate safety cables, through a "16" power camera lens. Anderson then went to the site, presented his credentials, and was allowed to interview the two employees he had observed.

During the interview and at the hearing before the ALJ, the two employees, Randall Manley ("Manley") and Donald McVay ("McVay"), admitted to violating the OSHA regulation, and Manley, who said he considered himself a foreman on the site, stated that he realized safety cables were required, but that they had not been installed on certain parts of the site. In addition, Manley stated his belief that the cables that had been installed were unsuitable.

In rebuttal, James Willson, Willson's vice president for field operations, testified that the area where Manley and McVay were observed working without safety cables had not been opened for work, and that the two had begun work there without authorization from a supervisor. However, Willson also admitted that Manley was a "leadman" on the job, and that as such, he was responsible for making sure that his crew members observed all relevant safety regulations.

The ALJ found that Manley and McVay were working at a height of at least 75 feet without adequate protection, and that Manley's knowledge of that lack of protection was imputed to Willson as a result of Manley's supervisory authority. The ALJ also rejected Willson's defense of unforeseeable employee misconduct.

3

II.

Willson asserts several grounds for reversing the Commission's order. We address each in turn.

A.

Willson first claims that the ALJ erred in admitting Anderson's videotape of Manley and McVay because the tape was made in violation of the Fourth Amendment to the U.S. Constitution. Since the possible application of the Fourth Amendment's exclusionary rule to this case involves a mixed question of law and fact, we review this issue de novo.[3]

As Willson notes, the Fourth Amendment's protection against unreasonable searches and seizures extends to commercial property,[4] but, in addition, that protection must be premised on a "reasonable expectation of privacy."[5] Willson argues that it had such an expectation with regard to the Orlando construction site, and that therefore Anderson's warrantless observation of that site was illegal. The Commission found that there was no reasonable expectation of privacy because, "[a]nyone on the side of the [Peabody] hotel facing the Civic Center could observe the activities [on the Willson site] . . . ."[6] We agree.

Although surveillance is a type of search that can invoke Fourth Amendment protections if performed unreasonably, we hold that Anderson's long-distance observations were not unreasonable. What Anderson's tape recorded was easily observable by anyone on one of the hotel's upper stories, which seems to fall squarely within the basic Fourth Amendment principle, restated by this court in Tarantino v. **Baker**,[7] that "a person has no `reasonable expectation of privacy'

_____

[3] United States v. Gastiaburo, 16 F.3d 582, 585 (4th Cir. 1994).

[4] Marshall v. Barlow's, Inc., 436 U.S. 307, 311 (1978).

[5] Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

[6] J.A. at 325.

[7] 825 F.2d 772 (4th Cir. 1987).

4

when he leaves conditions permitting a curious passerby to invade his `private space.'"[8] In addition, in addressing a similar situation in which an OSHA compliance officer took still photographs of work at a site before actually approaching the site and requesting an inspection, the Commission held that "there is no constitutional violation when an inspector makes observations from areas on commercial premises that are out of doors and not closed off to the public . . . ."[9]

Although, as Willson points out in its brief, the roof of the Peabody Hotel was not completely open to the public, and Anderson did employ a high powered lens in shooting the videotape, the crucial aspect of the situation seems to be that Willson left the construction site open to observation from vantages outside its control. As the inquiry should focus on what sort of "expectation of privacy" Willson had, we believe that a sustained view from a hotel across the street is difficult to classify as an unreasonable intrusion into Willson's "private space."[10] That this sustained view was enhanced by the use of a telephoto camera lens does not change this conclusion.[11] Therefore,

---

[8] Tarantino v. Baker, 825 F.2d 772, 776 (4th Cir. 1987) (quoting United States v. Head, 783 F.2d 1422 (9th Cir. 1986)). Although Tarantino involved a suit under 42 U.S.C. § 1983 and thus inquired into whether the constitutional rule in question was "clearly settled," its discussion of what constitutes a "reasonable expectation of privacy" is instructive.

[9] Secretary of Labor v. Concrete Constr. Co., 15 O.S.H.C. 1614, 1617 (1992).

[10] See Marshall v. Western Waterproofing Co., 560 F.2d 947, 950-51 (8th Cir. 1977). The Marshall court held that there was no Fourth Amendment violation in a case where an OSHA inspector obtained access to a private building to view adjacent repair scaffolding as "a person who exercises control over premises may consent to a search and evidence gathered in that search may be used against persons who did not consent." Id. at 950 (citations omitted).

[11] See Dow Chemical v. United States, 476 U.S. 227, 238 (1986) (EPA's use of high-powered camera lenses in aerial surveillance did not violate company's reasonable expectation of privacy because, despite the fact that "they undoubtedly give EPA more detailed information than naked-eye views," the photographs "remain limited to an outline of the facility's buildings and equipment"). Such seems to be the case here.

5

we hold that there was no Fourth Amendment violation on which to base an exclusion of the surveillance videotape.

B.

Willson also contends that the surveillance violated § 8(a) of the Act ("§ 8(a)"). Specifically, Willson argues that § 8(a) requires that an OSHA inspector present his credentials before any "inspection" of a "factory, plant, establishment, construction site, or other area . . . ."[12] Willson contends that this requirement extends to observations of such areas, and that the surveillance thus violated § 8(a) because Anderson did not present his credentials to the "owner, operator, or agent in charge"[13] of the Willson site. Again, we disagree with Willson's argument, and affirm the Commission's holding on this issue.

As the Commission made clear in its decision, § 8(a) is both broader and narrower in scope than the Fourth Amendment. It is broader in scope "because, even when the employer has consented to a compliance officer's entry and thus waived any protection under the Fourth Amendment, section 8(a)(2) may be violated if, for example, the on-site inspection is not conducted at reasonable times, within reasonable limits, and in a reasonable manner."[14] In addition, the Commission noted that § 8(a) is also narrower in scope than the Fourth Amendment in that it requires an actual entry onto a site before its protections are invoked.[15] We believe that the Commission was correct in this characterization of § 8(a).

In full, § 8(a) provides that:

> In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized--
>
> (1) to enter without delay and at reasonable times

_____

[12] 29 U.S.C. § 657(a)(1) (1994).

[13] Id. § 657(a).

[14] J.A. at 327.

[15] Id.

6

any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.**16**

The Commission, at the Secretary's urging, read § 8(a)(1) as focusing on the entrance onto a worksite, and thus concluded that it does not apply to "off-site" observations such as the one in this case. We agree.

As the legislative history of the Act makes clear, § 8(a) was designed "for government personnel to have the right of entry in order to ascertain the safety and health condition and status of compliance of any covered employing establishment."**17** With this purpose in mind, the legislative history indicates that § 8(a) deals with "the inspector's presence" at a worksite, and refers exclusively to "physical inspection[s]" of such sites.**18** Nothing in the statute or its legislative history indicates that § 8(a)'s requirements apply to nontrespassory observations of worksites. In addition, as such an application would only be found despite § 8(a)'s failure to speak "to the precise question at issue,"**19** we must defer to the Secretary's clearly reasonable interpretation of that provision.**20** Therefore, we hold that Anderson's surveillance did not violate § 8(a).

_____

**16** 29 U.S.C. § 657(a) (1994).

**17** S. Rep. No. 91-1282 (1970), reprinted in 1970 U.S.C.C.A.N. 5177, 5187 (emphasis added).

**18** Id.

**19** Chevron v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984).

**20** Id. at 844.

7

## C.

Further, we find without merit Willson's contention that the surveillance violated Willson's "walk-around rights"[21] under § 8(e) of the Act ("§ 8(e)").[22] Like § 8(a), § 8(e) applies to "physical inspections,"[23] of worksites, and, as a result, "walk-around rights" would also seem inapplicable to such long-distance observations. We are unpersuaded by Willson's efforts to characterize the surveillance as an "hour inspection," and are of the opinion that § 8(e) uses the term "physical inspection" carefully, intending to denote an otherwise trespassory entrance onto the inspectee's property. Thus, we find § 8(e) inapplicable to this case.

## D.

Based on the foregoing, we hold that the ALJ correctly admitted the surveillance videotape into evidence.

## III.

Willson next argues that the Commission incorrectly placed on Willson the burden of showing that the conduct of Manley and McVay was unforeseeable or unpreventable. Specifically, Willson takes issue with the Commission's conclusion that, because a "supervisory employee" committed the violations in question, the knowledge of those violations should be imputed to Willson, and that it was thus incumbent upon Willson to "establish that it made good faith efforts to comply with the fall protection standards."[24] Willson argues that this finding is contrary to clearly established law, and we agree.

In Ocean Electric Corp. v. Secretary of Labor [25] we held that,

_____

[21] "Walk-around rights" refers to the inspectee's right to have the OSHA inspector accompanied by one of the inspectee's employees during the inspection.

[22] 29 U.S.C. § 657(e) (1994).

[23] S. Rep. No. 91-1282 (1970), reprinted in 1970 U.S.C.C.A.N. 5177, 5187.

[24] J.A. at 332.

[25] 594 F.2d 396 (4th Cir. 1979).

8

despite a finding of knowledge of the violation on the part of a supervisory employee, the Commission bore the burden of proving that the supervisory employee's acts were not unforeseeable or unpreventable.[26] In the present case, however, the Commission ignored this precedent, and, having imputed knowledge of the violation because of Manley's "Leadman" position, placed the burden of showing "good faith efforts to comply with the fall protection standards" squarely on Willson.[27] Because we find this burden-shifting in direct contravention of our rule announced in Ocean Electric, we reverse the Commission's decision.[28]

Although some sister circuits have held that unpreventable employee misconduct "is an affirmative defense that an employer must plead and prove,"[29] this circuit and others clearly agree that such must be disproved by the Secretary in his case-in-chief.[30] That the Secretary bears this burden is clearly the law of this circuit per Ocean Electric, and we see no reason to change that here.

_____

[26] Ocean Elec. Corp. v. Secretary of Labor, 594 F.2d 396, 401 (4th Cir. 1979).

[27] J.A. at 332. Significantly, the improper burden-shifting complained of in Ocean Electric consisted of the Commission's requirement of a "showing by the employer that the supervisory employee with knowledge of the violation was himself adequately supervised with regard to safety matters." Ocean Elec., 594 F.2d at 401 (citations omitted). We find this requirement substantially similar to the one at issue in this case.

[28] The Secretary contends that Ocean Electric should not apply here, as Manley was accompanied by McVay, who was not a supervisory employee. However, in so doing the Secretary ignores the fact that the ALJ in this case found the prima facie case of a violation because of Manley's status, and then placed on Willson the burden of rebutting with the "affirmative defense" of employee misconduct, and the Commission affirmed. J.A. at 289; 332.

[29] New York State Elec. & Gas Corp. v. Secretary of Labor, 88 F.3d 98, 107 (2d Cir. 1996) (holding that unforeseeability and unpreventibility are affirmative defenses and citing authority from the First, Fifth, Sixth, Eighth, and Eleventh Circuits in support of this proposition).

[30] See Ocean Elec., 594 F.2d at 401; Capital Elec. Line Builders v. Marshall, 678 F.2d 128, 129 (10th Cir. 1982); Pennsylvania Power & Light Co. v. OSHRC, 737 F.2d 350, 358 (3d Cir. 1984); Mountain States Tel. & Tel. Co. v. OSHRC, 623 F.2d 155 (10th Cir. 1980).

9

Ocean Electric's reasoning is consistent with the clear intent of the Act.**31** Therefore, we reaffirm its application in this circuit, and hold that the Commission's burden-shifting in this case was error. Accordingly, we reverse the Commission on this ground.

IV.

Willson also argues that the $7,000 fine levied by the Secretary was excessive. However, as the Secretary notes, this allegation is procedurally barred, as 29 U.S.C. § 660(a) clearly states that, "[n]o objection that has not been urged before the Commission shall be considered by the [reviewing] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."**32** As the fine in question was clearly a part of the ALJ's order,**33** it could have been raised before the Commission but was not.**34** Therefore, having found no extraordinary circumstances to excuse this omission, we hold that the fine cannot properly be considered here.

V.

Based on the foregoing, we reverse the Commission's order, and remand the case for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

_____

**31** See Ocean Electric, 594 F.2d at 399 (Congress clearly did not intend employer to be insurer of employee safety: rather, employers are to promote such safety "as far as possible" (quoting 29 U.S.C. § 651)).

**32** 29 U.S.C. § 660(a) (1994).

**33** J.A. at 294.

**34** In its reply brief, Willson claims that the argument in its brief before the Commission (not included in record) that the ALJ was in error "not to vacate the citation in its entirety" constitutes the presentment of the fine issue to the Commission. We disagree.

10

CAMPBELL, Senior Circuit Judge, concurring:

I agree with the court's able opinion, but, in repect to the determinative issue, I limit my agreement to the fact that <u>Ocean Electric Corp. v. Secretary of Labor</u>, 594 F.2d 396 (4th Cir. 1979), is controlling precedent in this Circuit and appears in these circumstnaces to be correctly applied in accordance with its terms. As a visitor, I see no occasion to decide, and do not decide, whether, as the opinion states, "<u>Ocean Electric</u>'s reasoning is consistent with the clear intent of the Act" and whether it is desirable to "reaffirm its application in this circuit."

11