## CIRCUIT COURT OF ARLINGTON COUNTY

Commissioner of Labor
and Industry

    v.

Magco of Maryland, Inc.

September 7, 1999

Case No. (Chancery) 98-129

BY JUDGE JOANNE F. ALPER

This cause came on before the Court for trial on August 17, 1999, upon the Bill of Complaint filed by the Commissioner of Labor and Industry ("Commissioner") against Defendant Magco, Inc., ("Magco") alleging a violation by defendant of the Occupational Safety and Health provisions of Va. Code Title 40.1 and the standards, rules, and/or regulations adopted pursuant to that statutory authority. This court has jurisdiction of this action under Va. Code § 40.1-49.4(E).

The Commissioner was represented by Assistant Commonwealth's Attorney Valerie Preiss. Magco was represented by attorney Bruce Lucensky of the Maryland Bar and local counsel Seth C. Berenzweig of the Virginia Bar.

Both parties presented evidence, *ore tenus*, and arguments to the Court. The following will set forth the Court's Findings of Fact and Conclusions of Law as required by Va. Code § 40.1-49.4(E).

### Findings of Fact

On December 20, 1996, Magco's employees were performing roofing work at a project located at 2425 Wilson Boulevard, Arlington, Virginia 22201. One of the three Magco employees on site that day was John

Hataloski, Magco's foreman who was, as he testified, "solely responsible for this project." Magco did not employ field superintendents; in Magco's customary practice the foreman was the superintendent. The foreman's responsibility was *inter alia*, to make all field calls and to act as the safety officer responsible for project safety.

Hataloski had extensive experience and training in safety issues connected with roofing work and was more familiar with the safety regulations than any of Magco's other foremen. In fact Hataloski testified that he was the "most knowledgeable foreman" in the company regarding OSHA regulations.

In addition to the foreman Hataloski, the other Magco employees who were working at the site on December 20, 1996, were Kevin Barnes, a relatively new employee, and another employee who was working on a different part of the roof.

Hataloski was aware that there was a hole in the roof of the building in close proximity to where he and Barnes would be working on December 20, which opened to a seven to eight story shaft below. He knew of the existence of this and other "holes" in the roof and had complained to the general contractor numerous times prior to December 20 about the unsafe condition that those holes created for the men working on the roof. On December 20 when Magco's employees arrived on the site, they were preparing to complete the last several hours of work needed on the job. When Hataloski arrived on the roof, he noted that a portion of the shaft in question had been covered with a piece of plywood and another portion of the shaft had been covered with a wooden pallet. Neither the plywood nor the wooden pallet entirely covered the opening. Hataloski did not check to see if the pallet had been secured. Hataloski admitted that he should have checked the pallet and that he "probably" knew the pallet was a risk to the safety of the employees that morning. On top of the pallet, there was a metal beam above the shaft which rested on cinder blocks located on either side of the shaft. On Hataloski's instructions, the Magco employees moved the steal beam to better access the work area, which was approximately two feet away from the opening of the shaft. After removing the steel beam, Hataloski told the Magco employees to be careful while working around the shaft.

Neither Barnes nor Hataloski used any fall protection devices while working within two feet of the shaft. Barnes and Hataloski were squatting in the two foot wide space between the penthouse wall and the shaft when Barnes leaned back as if to sit on the pallet covering the shaft. The unsecured wooden pallet shifted with his weight and Barnes fell down the shaft with the pallet, falling approximately eight stories. He died as a result of his injuries.

Compliance Officer David Cline conducted an inspection of the work site and an investigation. On April 24, 1997, the Commissioner issued one "serious" fatality-related violation of § 1926.501(B)(4)(i) of the VOSH Standards for the Construction Industry to Magco with an assessed penalty of $7,000. Magco contested the citation and thereafter the Commissioner filed a Bill of Complaint to enforce the administrative finding of a serious violation against Magco.

## Conclusions of Law

Magco has argued in its defense that the Commissioner's citation is improper as a matter of law due to (a) the fact that the project was a multi-employer work site and the general contractor was responsible for assuring the shaft was securely covered, and (b) Magco was not responsible since the Commissioner did not prove that Magco's officers had knowledge of the allegedly violative condition, and it was the result of individual misconduct.[1]

To establish a multi-employer defense, Magco must prove three elements: (1) the employer did not create the hazardous/violative condition; (2) the employer did not control the hazardous condition such that it could realistically have abated the condition as required by the standard, and (3) the employer did not have, and, within the exercise of reasonable diligence, could not have had, notice that the violative condition was hazardous. *Rockwell International Corp.*, 17 OSHC 1801 (1996).

In this case, the Court finds that Magco did not prove two of the three required elements of the multi-employer defense. Although it is clear that Magco did not create the hazardous or violative condition, Magco failed to prove that it could not have realistically abated the condition. Clearly Hataloski, Magco's foreman, superintendent and safety officer, could have checked to see whether the pallet was secured and, if it was not, could have secured it himself, and/or he could have required that the Magco employees working on the roof wear safety harnesses to prevent injury in the event of a fall. Moreover, with respect to the third element, Magco, by its employee Hataloski, *did* have notice that the violative condition was hazardous. As Hataloski testified, he clearly recognized and was concerned about the hazardous condition and he could have taken his men off the job in view of the general contractor's failure to secure the holes on the roof. Had Hataloski done any of the foregoing, it is likely that Barnes would be alive today.

---

[1] There appears to be no issue that if the citation of Magco was proper, as a matter of fact and law, it was appropriate to issue a "serious" violation with the maximum fine, since the accident resulted in a death.

Further an employer at a multi-employer work site is responsible for hazards created by other contractors to which its own employees are exposed, unless it takes reasonable alternative measures to protect its employees, or, in the absence of exposure of its own employees, for any hazardous conditions which it creates or controls. *Secretary of Labor v. Anthony Crane Rental,* 16 OSHC 2107, 2110 (1994). Magco knew of the violative condition through its foreman. Hataloski had reported the danger to the general contractor. In addition, Hataloski had told his employees to remove the steel beam which was placed over the pallet, presumably to alert employees to the presence of the pallet. Accordingly as a matter of fact and law there is no basis for Magco to invoke the multi-employer defense.

Magco's second defense is that it is not responsible or liable for the Commissioner's citation since the Commissioner failed to prove that Magco's officers had knowledge of the allegedly violative condition and the accident was the result of an individual's, i.e. Hataloski's, conduct. In order to establish this misconduct defense, Magco must show that it has an established work rule in place to prevent the condition. The work rule must be adequately communicated to employees and enforced through training, supervision, and disciplinary measures upon violation. The employer is also required to take reasonable steps to discover any alleged violation. Magco urges the Court to follow the ruling of the United States Court of Appeals for the Fourth Circuit in the Case of *Ocean Electric Corp. v. Secretary of Labor,* 594 F.2d 396 (4th Cir. 1979), which places the burden of proof on the government to prove the supervisory employee's act was not an isolated incident of unforeseeable or idiosyncratic behavior. The Court notes that this ruling has not been adopted by the Virginia Supreme Court, nor has it been adopted by a number of the other federal circuit courts of appeals which have dealt with this issue. Those courts have generally ruled that the burden of proving supervisory misconduct rests with the employer who is asserting the defense.

The leading Virginia Supreme Court case on this issue is *Floyd S. Pike Electrical Contractor, Inc. v. Commissioner,* 222 Va. 317, 281 S.E.2d 804 (1981). While the *Ocean Electric* case was cited by the Supreme Court in its ruling that the safety regulation at issue in that case was not designed to make the employer the insurer of an employee's safety, the Court did not adopt or endorse the shifting of the burden of proof. The Court noted that a safe workplace is not necessarily risk-free.

An employer ... need not take steps to prevent hazards which are not generally foreseeable, including idiosyncratic behavior of an

employee, but at the same time an employer must do all it feasibly can to prevent foreseeable hazards ... .

222 Va. 317 at 322-323 (citations omitted). In the *Pike* case, the Supreme Court affirmed the trial court's ruling that the employer chose a measure that would not have removed the danger to its employees and chose to disregard other safety measures that would have prevented the accident, a situation which was virtually analogous to the facts of this case. This Court finds that the burden of proof on this issue lies with Magco and that the defendant failed to produce evidence sufficient to meet that burden.

Magco alleges that its officers had no knowledge that Hataloski had instructed Barnes to work in close proximity to a shaft that had not been securely covered and that Hataloski's actions should not be imputed to his employer. This position seems to be in conflict with the position necessary to sustain the multi-employer defense, i.e. that Hataloski took realistic measures to protect his employees at the work site and the fault was that of other employers.

Although Magco argues that Hataloski was a mere foreman and that the knowledge of his action and conduct cannot be imputed to the management of Magco, the evidence at trial clearly proves that Hataloski was a representative of management on the project. He was, as the unrebutted evidence showed, the field superintendent for this work, he had sole authority as to when and where the employees would work and he was the Magco employee who was most knowledgeable about safety. Hataloski had been most extensively trained in issues of roofing safety and had substantial knowledge of OSHA safety regulations for roofers. Since, as he testified without contradiction, Hataloski had the authority and ability to remove his employees from the work site after discerning the dangerous condition or to direct them to take appropriate safety precautions such as harnesses, the Court concludes as a matter of law that Magco is deemed to have had the knowledge of the violative condition as Hataloski had on December 20, 1996.

Finally to the extent Magco is relying upon the defense of "supervisory misconduct," this Court finds as a matter of law that the VOSH Administrative Regulations do not recognize that defense. The only misconduct which is recognized is that of "employee misconduct" which specifically excludes supervisors. This conduct alleged here was that of Hataloski, a supervisor, not an employee. Accordingly, this defense is not available as a matter of law to Magco.

Upon the Findings of Fact and Conclusions of Law set forth above, the Court affirms the Commissioner's citation and proposed penalty.